Glenn R. Kantor, State Bar No. 122643
gkantor@kantorlaw.net
Beth A. Davis, State Bar No. 277560
bdavis@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff
CATHLEEN MURPHY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHLEEN MURPHY, | Case No. |
| Plaintiff, | COMPLAINT FOR: |
| vs. | **BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; DECLARATORY AND INJUNCTIVE RELIEF; PREJUDGMENT AND POST JUDGMENT INTEREST; STATUTORY PENALTIES; AND ATTORNEYS' FEES AND COSTS** |
| CALIFORNIA PHYSICIANS SERVICE d/b/a BLUE SHIELD OF CALIFORNIA LONG TERM DISABILITY PLAN and PRUDENTIAL LIFE INSURANCE COMPANY OF NORTH AMERICA, | |
| Defendants. | |

Plaintiff CATHLEEN MURPHY herein sets forth the allegations of her Complaint against Defendant PRUDENTIAL LIFE INSURANCE COMPANY OF NORTH AMERICA.

## PRELIMINARY ALLEGATIONS

1. "Jurisdiction" – This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by plaintiffs for employee benefits under employee benefit plans regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question. This action is brought for the purpose of obtaining

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    equitable relief or in the alternative, benefits under the terms of an employee benefit plan, all

2    under 29 U.S.C. § 1132(a). Plaintiffs seek also attorneys' fees and costs.

3        2.    Plaintiff is informed and believes that defendant, California Physicians Service

4    d/b/a Blue Shield of California Long Term Disability Plan (hereinafter "the LTD Plan"), is an

5    employee welfare benefit plan regulated by ERISA, established by California Physicians Service

6    d/b/a Blue Shield of California in which Cathleen Murphy was a participant in, and pursuant to

7    which plaintiff is entitled to long term disability benefits. The LTD Plan is doing business in the

8    Northern District of California, in that it covers employees residing in the Northern District.

9        3.    Plaintiff is informed and believes that defendant, Prudential Life Insurance

10   Company of America (hereinafter "Prudential"), is a corporation with its principal place of

11   business in the State of New Jersey, authorized to transact and transacting business in the Central

12   District of California and can be found in the Central District of California. Prudential is the

13   insurer of benefits under the Blue Shield of California Long Term Disability Plan (hereinafter "the

14   LTD Plan"). Plaintiff is further informed and believes that Prudential was responsible, in whole or

15   part, for enrollment, and other administration of the LTD Plan, and acted in the capacity of a plan

16   administrator of the LTD Plan.

17       4.    At all times relevant, Cathleen Murphy was employed by California Physicians

18   Service d/b/a Blue Shield of California. As a benefit of her employment, Ms. Murphy was

19   provided group long term disability insurance under the LTD Plan.

20       5.    Plaintiff is informed and believes that California Physicians Service d/b/a Blue

21   Shield of California funded the LTD Plan via the purchase of a group long term disability policy

22   from Prudential.

23       6.    Plaintiff is informed and believes that Prudential identifies the group long term

24   disability policy it issued to the California Physicians Service d/b/a Blue Shield of California Long

25   Term Disability Plan via the group contract number of G-43995-CA.

26       7.    Plaintiff is informed and believes that the subject group long term disability,

27   ("Prudential Group Contract Number G-43995-CA") was delivered to California Physicians

28   Service d/b/a Blue Shield of California in the State of California.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886-2525

Complaint for Breach of ERISA

8.      Plaintiff is informed and believes that the subject group long term disability, ("Prudential Group Contract Number G-43995-CA") was issued or renewed on or after January 1, 2012.

9.      Plaintiff is informed and believes that the subject group long term disability, ("Prudential Group Contract Number G-43995-CA") has an annual January 1 anniversary date.

### FIRST CLAIM FOR RELIEF FOR ERISA BENEFITS, PREJUDGEMENT AND POSTJUDGEMENT INTEREST, ATTORNEYS' FEES AND COSTS (29 U.S.C. § 1132(a)(1)(B))

10.      Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

11.      At all times relevant, Plaintiff was employed by California Physicians Service d/b/a Blue Shield of California, and was a covered participant under the terms and conditions of the LTD Plan.  The LTD plan was insured by defendant Prudential, and Prudential was also the Plan claims administrator and made all decisions to pay or deny benefit claims.

12.      During the course of Plaintiff's employment, Plaintiff became entitled to benefits under the terms and conditions of the LTD Plan.  Specifically, while Plaintiff was covered under the LTD Plan, Plaintiff suffered a disability rendering Plaintiff disabled as defined under the terms of the LTD Plan.

13.      Pursuant to the terms of the LTD Plan, on December 23, 2013, Plaintiff made a claim to Prudential for LTD benefits under the LTD Plan.  Specifically, while Plaintiff was covered under the LTD Plan, Plaintiff suffered a disability rendering Plaintiff disabled as defined under the terms of the LTD Plan.  Plaintiff's medical leave resulting from her disabling condition commenced on May 22, 2013.  After leaving work due to a medical condition, the Plaintiff submitted a claim for LTD benefits to Prudential.  Prudential assigned her claim number 11943049.

14.      On February 21, 2014, Prudential representative Kimurra Chadwick called Kantor

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

3

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    & Kantor, LLP, and spoke with associate attorney, Beth A. Davis, notifying Ms. Davis that

2    Prudential had not received certain documents that were listed in the December 23, 2013, claim

3    for LTD benefits. Ms. Davis's legal assistant, Michelle Cipres, resent the documents via email on

4    February 21, 2014.

5        15.    On February 25, 2014, Prudential wrote to Ms. Murphy's legal counsel enclosing

6    forms to be completed. This correspondence was received on February 27, 2014.

7        16.    On February 25, 2014, Ms. Davis wrote to Prudential requesting that the claim

8    review be expedited, given that it had been made on December 23, 2013, and it had taken

9    Prudential almost 2 months to notify Ms. Murphy's counsel that it was missing documents

10    necessary to the claim review. A copy of the February 25, 2014, fax and executed certified receipt,

11    along with the letter, is attached hereto as Exhibit "1."

12        17.    On March 3, 2014, Prudential wrote to Ms. Murphy's legal counsel claiming to

13    have first received information on Ms. Murphy's claim on February 18, 2014. 16. A copy of the

14    March 3, 2014, letter is attached hereto as Exhibit "2."

15        18.    On March 6, 2014, Ms. Davis responded to Prudential's correspondence of March

16    3, 2014 enclosing proof in the form of an executed certified mail receipt establishing that

17    Prudential received Ms. Murphy's package of materials regarding her LTD claim on December

18    29, 2013.   Ms. Davis also enclosed an invoice showing that legal counsel paid $24.35 to ship all

19    of the documents listed in that letter to Prudential and calculating that Prudential's 45 days in

20    which to render a claim decision fell on February 12, 2014.   This letter gave Prudential until

21    March 14, 2014, almost a month more than the 45-days it was allotted under the federal

22    regulations, in which to render a claim decision. A copy of the March 6, 2014, letter, along with

23    the executed certified mail receipt and shipping invoice are attached hereto as Exhibit "3."

24        19.    On March 14, 2014, Prudential representative, Kimurra Chadwick called and spoke

25    with Kantor & Kantor, LLP attorneys Glenn R. Kantor and Beth A. Davis.  During this call, Ms.

26    Chadwick stated that the ltd claim has been approved but that Prudential needed additional time to

27    determine the date of disability for Ms. Murphy.

28        20.    On March 20, 2014, Ms. Chadwick, writing for Prudential, confirmed the substance

Complaint for Breach of ERISA

of this call.  This correspondence stated:

> We are writing to let you know we have determined that Ms. Murphy is medically eligible to receive LTD benefits. However, at this time we require an additional period of time to complete the determination on her claim for LTD benefits.
>
> We are awaiting information regarding Ms. Murphy's date of disability (when Ms. Murphy ceased working part time and was considered totally disabled), days in which Ms. Murphy worked during the Elimination Period, earnings and job description.

A copy of the March 20, 2014, letter, along with the executed certified mail receipt and shipping invoice are attached hereto as Exhibit "4."

21.     On March 31, 2014, Ms. Chadwick sent an email to Ms. Davis's assistant requesting additional information intended to help determine the date of Ms. Murphy's disability. A copy of the March 31, 2014, email is attached hereto as Exhibit "5."

22.     On April 4, 2014, Ms. Murphy's counsel wrote to Ms. Chadwick responding to her questions.  A copy of the April 4, 2014, letter is attached hereto as Exhibit "6."

23.     On April 24, 2014, Prudential wrote to Ms. Murphy's legal counsel again regarding the status of her claim, stating that, among other things, information from her employer had prompted them to conduct a re-evaluation of the medical review it had just completed. A copy of the April 24, 2014, letter is attached hereto as Exhibit "7."

24.     On April 30, 2014, Prudential wrote to Ms. Murphy's legal counsel taking a 30-day extension to make its claim decision.

25.     On May 21, 2014, Prudential wrote to MS. Murphy's legal counsel to notify them that it was taking yet another 30-day extension and that:

> At this time we cannot identify a psychological or physical impairment which would preclude Ms. Murphy from performing the requirements of her regular occupation. Additionally, Ms. Murphy's medical file lacks evidence to corroborate a neurological deficit which would support a cognitive impairment. As a result, we are currently unable to make a determination on Ms. Murphy's claim. We have requested Ms. Murphy's treating doctor, Dr. Frye comment on our opinion of her psychological, physical and cognitive functioning level. We have asked Dr. Frye to review and respond to our medical opinion by June 2, 2014.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

5

1    A copy of the May 21, 2014, letter is attached hereto as Exhibit "8."

2    26.    Defendants have failed to comply with their obligation to provide Plaintiff with a

3    claim decision within the time allotted under the federal regulations.  Thus, Plaintiff has performed

4    all duties and obligations on Plaintiff's part to be performed under the LTD Plan.  Based on the

5    foregoing, Plaintiff has exhausted her administrative remedies, and her claim should be deemed

6    exhausted pursuant to Department of Labor Regulations.  29 C.F.R. § 2560.503-1.

7    27.    Defendants have breached the LTD Plan and violated ERISA in the following

8    respects:

9    (a)    Failing to pay LTD benefit payments to Plaintiff at a time when Prudential knew,

10   or should have known, that Plaintiff was entitled to those benefits under the terms of the LTD

11   Plan, as Plaintiff was disabled and unable to work and therefore entitled to benefits.  Even though

12   Prudential had such knowledge, Prudential denied Plaintiff's LTD benefits;

13   (b)    Failing to provide a prompt and reasonable explanation of the basis relied on under

14   the terms of the LTD Plan documents, in relation to the applicable facts and LTD Plan provisions,

15   for the denial of Plaintiff's claims for LTD benefits;

16   (c)    Failing to adequately describe to Plaintiff any material or information necessary for

17   Plaintiff to perfect her claim under the LTD Plan along with an explanation of why such material

18   is or was necessary;

19   (d)    Concealing and withholding from Plaintiff the notice requirements Defendants

20   were required to provide Plaintiff pursuant to ERISA and the regulations promulgated thereunder,

21   29 C.F.R. § 2560.503-1; and

22   (e)    Failing to properly and adequately investigate the merits of Plaintiff's claim and

23   failing to provide a full and fair review of Plaintiff's claim.

24   28.    Plaintiff is informed and believes and thereon alleges that Defendants wrongfully

25   denied her disability benefits under the LTD Plan by other acts or omissions of which Plaintiff is

26   presently unaware, but which may be discovered in this future litigation and which Plaintiff will

27   immediately make Defendants aware of once said acts or omissions are discovered by Plaintiff.

28   29.    As a direct and proximate result of the aforementioned wrongful conduct of

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    Defendants, Plaintiff has damages for loss of disability benefits in a total sum to be shown at the

2    time of trial.

3         30.    As a further direct and proximate result of this improper determination regarding

4    Plaintiff's LTD claim, Plaintiff in pursuing this action has been required to incur attorneys' costs

5    and fees. Pursuant to 29 U.S.C. § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid

6    by Defendants.

7         31.    The wrongful conduct of Defendants has created uncertainty where none should

8    exist. Therefore, Plaintiff is entitled to enforce her rights under the terms of the LTD Plan and to

9    clarify her right to future benefits under the terms of the LTD Plan.

10

11                              **REQUEST FOR RELIEF**

12        WHEREFORE, Plaintiff prays for relief against Defendants as follows:

13        1.     Payment of disability benefits due Plaintiff up to and including the date of

14   Judgment;

15        2.     An order declaring that Plaintiff is entitled to immediate payment of all past due

16   benefits, reinstatement to the LTD Plan, with all ancillary benefits to which she is entitled by

17   virtue of her disability, and that benefits are to continue to be paid under the LTD Plan for so long

18   as Plaintiff remains disabled under the terms of the LTD Plan;

19        3.     In the alternative to the relief sought in paragraphs 1 and 2, an order remanding

20   Plaintiff's claim to the claims administrator to the extent any new facts or submissions are to be

21   considered;

22        4.     Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred

23   in pursuing this action;

24        5.     Payment of prejudgment and post-judgment interest as allowed for under ERISA;

25   and

26        6.     Such other and further relief as this Court deems just and proper.

27   //

28   //

Complaint for Breach of ERISA

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

1    DATED: June 2, 2014                    KANTOR & KANTOR, LLP

2

3                                     By:     /s/ Glenn R. Kantor

4                                             Glenn R. Kantor
                                              Attorneys for Plaintiff,
5                                             Cathleen Murphy

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Breach of ERISA

**KANTOR & KANTOR LLP**
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*  **Byron G. Hopkins**  C. Date of Delivery |
| 1. Article Addressed to:<br><br>Prudential<br>P.O. Box 13400<br>Philadelphia PA<br>19176 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No<br><br>FEB 28 2014<br><br>3. Service Type<br>☑ Certified Mail®  ☐ Priority Mail Express™<br>☐ Registered  ☐ Return Receipt for Merchandise<br>☐ Insured Mail  ☐ Collect on Delivery<br>4. Restricted Delivery? *(Extra Fee)*  ☐ Yes |
| 2. Article Number<br>*(Transfer from service label)*  7012 3460 0002 9448 2646 | |
| PS Form 3811, July 2013  Domestic Return Receipt | |



19839 NORDHOFF STREET • NORTHRIDGE • CA 91324
TEL (818) 886-2525 • FAX (818) 350-6272
WWW.KANTORLAW.NET

February 25, 2014

***Certified Mail - Return Receipt Requested and
Email: kimmurra.chadwick@prudential.com***
Kimmurra Chadwick
Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19176

     Re:   Name: Cathleen A. Murphy
            Claim Number: 30130807846-0001
            Plan/Policy Holder: Blue Shield of California

Dear Ms. Chadwick:

    As you are aware this office represents Cathleen Murphy with regard to her claim for Long Term Disability ("LTD") benefits under the disability policy issued to her employer, Blue Shield of California and that we wrote to Prudential on December 23, 2013 in order to make her LTD claim.

    You called me on February 21, 2014, to notify me that you had not received certain documents listed in my correspondence of December 23, 2013. My legal assistant, Michelle Cipres, resent those documents to you on February 21, 2014 via email.

    I am writing to insist that Prudential expedite the claim review process and render its decision as soon as possible. We included all the documents listed in the December 23, 2013, correspondence for the very purpose of expediting the claim process. Yet Prudential waited 2 months to notify us that it had not received all the documents. Ms. Murphy should not be penalized for Prudential's failure to notify us in a timely manner that documents were needed, particularly when she made the effort at the outset of the claim to provide Prudential with as much information as possible so as to minimize the delay that would occur if Prudential were to have to gather that information itself.

               Very truly yours,
               Kantor & Kantor, LLP

               Beth D. Perez, Esq.

BAD/mvc
Copy to: Cathleen Murphy

 **Prudential**

RECEIVED
MAR 1 0 2014
BY:_____

**Kimmurra Chadwick**
Disability Claim Consultant

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 86607
Fax: (877) 889-4885
**Website: www.prudential.com/mybenefits**
**Web Access Code: 43995**

March 3, 2014

Beth A. Davis
Kantor & Kantor, LLP
19839 Nordhoff St.
Northridge, CA 91324

Claimant: Cathleen Murphy
Claim No.: 11943049
Control No./Br.: 43995 / 01BHR

Dear Beth A. Davis:

We are in receipt of correspondence dated February 25, 2014 in which you express concern over the time in which it has taken Prudential to review Ms. Murphy's claim for Long Term Disability (LTD) benefits.

For the purpose of responding to your inquiry, a review of Ms. Murphy's claim file has been completed to determine when the date of first notice was made. A review of the file reveals that Prudential first received information regarding Ms. Murphy's claim on February 18, 2014. Further review suggests that this information is a copy of correspondence received from your office dated December 23, 2013 and it was provided by Sedgwick. Perhaps this is why the complete file was not received by Prudential initially.

We recognize the desire to have Prudential expedite our review of Ms. Murphy's file and we are working as quickly as reasonably possible to determine Ms. Murphy's eligibility for benefits. Ms. Murphy's file has been referred for a medical review as of February 25, 2014. In general the duration for this review could take up to 10 days.

Additionally, we appreciate the information that was provided to begin our review, however, we do require additional information to properly review Ms. Murphy's file. Please refer to correspondence dated February 21, 2014 for details. Kindly have Ms. Murphy complete the required forms and return them to our office as quickly as possible. This information will be used to help render a decision on Ms. Murphy's claim.

Lastly, we will make every attempt to render our decision of Ms. Murphy's claim within the 45 days allowed by ERISA. Based on the claim receipt date of February 18, 2014, the initial review period will end on April 3, 2014. Additionally, we will keep your office updated regularly. Should you like to discuss this matter further I may be reached at (800) 842-1718, ext. 86607.

Sincerely,

*Kimmurra Chadwick*
Kimmurra Chadwick
Disability Claim Consultant

**SENDER: *COMPLETE THIS SECTION***

- ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Prudential
P.O Box 13480
Philadelphia PA
19176

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X *[signature]*   ☐ Agent
                  ☐ Addressee

B. Received by *(Printed Name)*     C. Date of Delivery

Byron G. Hopkins

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:           ☐ No

3. Service Type
☑ Certified Mail®        ☐ Priority Mail Express™
☐ Registered            ☑ Return Receipt for Merchandise
☐ Insured Mail          ☐ Collect on Delivery

4. Restricted Delivery? *(Extra Fee)*     ☐ Yes

2. Article Number
   *(Transfer from service label)*     7012 3460 0002 9448 2714

PS Form **3811**, July 2013          Domestic Return Receipt



19839 NORDHOFF STREET • NORTHRIDGE • CA 91324
TEL (818) 886-2525 • FAX (818) 350-6272
WWW.KANTORLAW.NET

March 6, 2014

***Certified Mail - Return Receipt Requested and
Email: kimmurra.chadwick@prudential.com***
Kimmurra Chadwick
Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19176

   Re:  Name: Cathleen A. Murphy
       Claim Number: 30130807846-0001
       Plan/Policy Holder: Blue Shield of California

Dear Ms. Chadwick:

   Enclosed please find the completed forms Prudential has requested from Ms. Murphy.

   In response to your correspondence of March 3, 2014, in which you state that your file review reveals Prudential first received information regarding regarding Ms. Murphy's claim for benefits on February 18, 2014, we suggest that you have overlooked critical information in your file. Enclosed for your convenience is an executed certified mail receipt which establishes that Prudential received our package of materials regarding Ms. Murphy's LTD claim on December 29, 2013. Also enclosed is an invoice showing that we paid $24.35 to ship all of the documents listed in that letter to Prudential. Whether Prudential then lost the letter and the documents or whether they are still floating around Prudential's mail room has no impact on the fact that Prudential was put on notice of this claim as of December 29, 2013, and its review period under ERISA commenced on that date.

   In your letter , you state that Prudential will make every effort to complete the claim review "in the 45 days ERISA allows." You then calculate that deadline by an inaccurate receipt of claim date of February 18, 2014. As established by the documentation enclosed with this letter, Prudential received the claim on December 29, 2013: 45 days from December 29, 2013 is February 12, 2014. Thus, Prudential is already well beyond its 45-day review deadline.

Kimmurra Chadwick
Prudential Insurance Company of America – Disability Management Services
Re: Cathleen A. Murphy: Review of LTD Claim
March 6, 2014
Page 2


We will give Prudential until March 14, 2014, to provide us with notice of a claim approval and payment of retroactive benefits.  If we have not received the notice of claim approval and check for benefit by that date, we will file suit as Prudential has exceeded its review period and the claim procedures will be deemed exhausted.



Very truly yours,
Kantor & Kantor, LLP

Beth D. Perez, Esq.

BAD/mvc
Copy to:  Cathleen Murphy

**Michelle Cipres**

| | |
|---|---|
| **From:** | US_Postal_Service@usps.com |
| **Sent:** | Tuesday, March 4, 2014 7:11 PM |
| **To:** | Michelle Cipres |
| **Subject:** | U.S. Postal Service Track & Confirm email Restoration - 70113500000356972311 |

This is a post-only message. Please do not respond.

Michelle Cipres has requested that you receive this restoration information for Track & Confirm as listed below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: 70113500000356972311

Service Type: Certified Mail™

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | PHILADELPHIA PA 19176 | December 29, 2013 6:34 am |
| Available for Pickup | PHILADELPHIA PA 19176 | December 27, 2013 9:41 am |
| Arrival at Unit | PHILADELPHIA PA 19176 | December 27, 2013 9:12 am |
| Depart USPS Sort Facility | PHILADELPHIA PA 19176 | December 27, 2013 |
| Processed through USPS Sort Facility | PHILADELPHIA PA 19176 | December 27, 2013 5:32 am |
| Depart USPS Sort Facility | SANTA CLARITA CA 91383 | December 24, 2013 |
| Processed through USPS Sort Facility | SANTA CLARITA CA 91383 | December 23, 2013 11:44 pm |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please visit the Frequently Asked Questions (FAQs) section of our Track & Confirm tool at http://www.usps.com/shipping/trackandconfirmfaqs.htm.

1

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Prudential
P.O. Box 13480
Philadelphia PA
    19176

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

Byron G. Hopkins

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

DEC 29 2013

3. Service Type
   ☒ Certified Mail®    ☐ Priority Mail Express™
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ Collect on Delivery

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)    7011 3500 0003 5697 2311

PS Form 3811, July 2013        Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge CA 91324    Mc

RECEIVED JAN 0 2 2014 BY:

Pro   ·12/23/13   Murphy

## Search Prints

Date: Custom From: 12/23/2013 To: 12/23/2013 Go Search All Fields Go Customize Display

Edit Cost Code Return Label Export

| | Info | Print Date | Cost | Recipient | Status | Carrier | Class / Service | Special Services | Weight | Mail Date | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | USPS | First Class ® | | 0lb 1oz | 12/23/2013 | E |
| | | | | | | USPS | First Class ® | | 0lb 6oz | 12/23/2013 | M |
| | | | | | | USPS | Priority Mail ® | Certified Mail ™, Return | 4lb 1oz | 12/23/2013 | M |
| | i | 12/23/2013 | $24.35 | Prudential Insurance Company of America, C | Printed | USPS | Priority Mail ® | Certified Mail ™, Return | 4lb 1oz | 12/23/2013 | M |
| [redacted] | | | | | | USPS | Priority Mail ® | Certified Mail ™, Return | 4lb 1oz | 12/23/2013 | M |
| | | | | | | USPS | Priority Mail ® | Certified Mail ™, Return | 4lb 1oz | 12/23/2013 | M |
| | | | | | | USPS | First Class ® | | 0lb 1oz | 12/23/2013 | E |
| | | | | | | USPS | First Class ® | Certified Mail ™, Return | 0lb 1oz | 12/23/2013 | E |
| | | | | | | USPS | First Class ® | Certified Mail ™, Return | 0lb 1oz | 12/23/2013 | E |

Check All | Uncheck All



Search Prints                                                                                          Page 1 of 1



 **Prudential**

**Group Disability Insurance**

The Prudential Insurance Company of America
**Disability Management Services**
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718   Fax: 877-889-4885
http://www.prudential.com/disability

## Education and Employment Form

**1** **Claimant Information**

Claimant's Name: _Cathleen Murphy_

Claim No. _11943049_   Policy No. _unknown_

In order to continue the evaluation of your claim, we need some additional information. Please complete this form to the best of your ability and return in the enclosed envelope. If you have any questions, please do not hesitate to contact us 800-842-1718.

**2** **Employment History**

Beginning with present or most recent job held 1 year or more, describe each job worked within the past 15 years. Resumes are appreciated. Please include when available. If you held more than 1 job with a specific employer, please list each one separately.

**1. Name of Employer:** _Blue Shield   of California_

Dates from: _6/2004_   to: _1/3/14_   Job Title: _Vice President_

Annual Salary: _$670 K_   Reason For leaving _Medically unable to perform job_

Tools, Equipment and/or material used in job: _____

Describe job duties in detail (include any supervisory requirements): _____

Certificate/License required to perform job: _____

**2. Name of Employer:** _____

Dates from: _____ to: _____   Job Title: _____

Annual Salary: _____   Reason For leaving _____

Tools, Equipment and/or material used in job: _____

Describe job duties in detail (include any supervisory requirements): _See job de resume attached_

Certificate/License required to perform job: _____

**3. Name of Employer:** _____

Dates from: _____ to: _____   Job Title: _____

Annual Salary: _____   Reason For leaving _____

Tools, Equipment and/or material used in job: _____

Describe job duties in detail (include any supervisory requirements): _____

Certificate/License required to perform job: _____

Please add pages if more than 3 jobs held in past 15 years.

 **Prudential**

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718 Fax: 877-889-4885
http://www.prudential.com/mybenefits

## Activities of Daily Living Questionnaire

**1** First Name: Cathleen   MI:   Last Name: Murphy   Claim Number: N9943049

**2** Contact Information

Home Phone:

Mobile Phone: 650 867 2345

E-mail Address:

**3** Medical Information

Note: If you require more space for your answers, please document on additional paper

What is your height? 180cm
What is your weight? 90kg lbs.
Which is your dominant hand? ☑ Right ☐ Left

List all the medical conditions that prevent you from returning to work:
degenerative + post-op cognitive decline, brain injury, temporal lobe focal seizures, anomia, written and verbal language difficulty, dysphagia, memory loss, difficult with any higher level cognition, impaired, calculations etc

What part of your job can you not do and why?
inappropriate speaking, executive cognition, multi-tasking comprehension + retention of material read. limit concentration. Poor recall

Do you have any other medical conditions that **do not** prevent you from working? ☐ Yes ☑ No

If yes, please note below these conditions.

GL.2008.223   Ed. 01/2013

69117

 **Prudential**

**Group Disability Insurance**

The Prudential Insurance Company of America
**Disability Management Services**
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718  Fax: 877-889-4885
http://www.prudential.com/myhenefits

## Group Disability Insurance Authorization

**1** | **Claimant's Information**

First Name: M U R P H Y

MI: A

Last Name: C L A T H L E E N

Social Security Number: 5 0 8 8 6 1 8 4

Employee Phone Number: 6 5 0 8 6 7 2 3 4 5

Control Number: 4 3 9 9 5 1

**2** | **Authorization for Release of Information to Prudential Insurance Company**

This authorization is intended to comply with the HIPAA Privacy Rule.

I authorize and instruct any health plan, physician, health care professional, medical professional, hospital, clinic, laboratory, pharmacy, clearinghouse, data warehouse, or other organization that aggregates and maintains pharmacy data, MIB, Inc. (formerly known as the Medical Information Bureau), medical facility, or other health care provider or insurance company or producer that has provided treatment, payment, or services to me or on my behalf ("My Providers") to disclose my entire medical record and any other information concerning me or my mental or physical health to the Prudential Insurance Company of America (Prudential) and its agents, employees, and representatives. This includes information on the diagnosis or treatment of Human Immunodeficiency Virus (HIV) infection and sexually transmitted diseases. This also includes information on the diagnosis and treatment of mental illness and the use of alcohol, drugs, and tobacco, but excludes psychotherapy notes.

I authorize any insurance company, employer, the Social Security Administration, or other person or institutions to provide any information, data, or records relating to my Social Security, Workers' Compensation, credit, financial, earnings, activities, or employment history to Prudential.

Unless limits* are shown below, this form pertains to all of the records listed above.

For purposes of this Authorization, I acknowledge that any agreements I have made with My Providers that restricts the disclosure of my protected health information as described above do not apply to this Authorization and I instruct My Providers to release and disclose my entire medical record without restriction, including any restrictions on healthcare items or services for which a healthcare provider has been paid out of pocket in full.

This information is to be disclosed under this Authorization so that Prudential may: 1) administer claims and determine or fulfill responsibility for coverage and provision of benefits; 2) obtain reinsurance; 3) administer coverage; and 4) conduct other legally permissible activities that relate to any coverage or benefits I have or have applied for with Prudential.

This Authorization shall remain in force for 24 months following the date of my signature below, while the coverage is in force, except to the extent that state law imposes a shorter duration. A copy of this Authorization is as valid as the original. I understand that I have the right to revoke this Authorization in writing, at any time, by sending a written request for revocation to Prudential at: P.O. Box 13480, Philadelphia, PA 19176. I understand that a revocation is not effective to the extent that any of My Providers or Prudential has relied on this Authorization or to the extent that Prudential has a legal right to contest a claim under any insurance policy or to contest the policy itself. I understand that any information that is disclosed pursuant to this authorization may be redisclosed and will no longer be protected by the HIPAA Privacy Rule governing privacy and confidentiality of health information.

I understand that if I refuse to sign this Authorization to release the entire medical record, Prudential may not be able to process my claim for benefits and may not be able to make any benefit payments. I understand that I have the right to receive a copy of this Authorization.

Authorization for Release of Information to Prudential Insurance Company

*Limits, if any:

X _____ 
Employee Signature (indicate how related if signed by other than claimant)

Date (mm dd yyyy): 0 2 2 7 2 0 1 4

**NOTICE TO MONTANA RESIDENTS:** You or your authorized representative are entitled to receive a copy of this Authorization, and upon request, a record of any subsequent disclosures of personal or privileged information.

© 2012 Prudential Financial, Inc. and its related entities.

Prudential, the Prudential logo and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities, registered in many jurisdictions worldwide.

GL.2003.242   Ed. 10/2012 | * 1 0 5 0 1 * | 45105 | Page 1 of 1

# Prudential

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Cathleen | | Murphy | N943049 |

**3** **Medical Information (Cont'd)**

Note: If you require more space for your answers, please document on additional paper

Provide the names, addresses and telephone numbers of all physicians who have treated you **within the past 12 months** for the above noted conditions **that prevent you from returning to work.**

| Doctor's full name: Dr Forsythe | Last office visit date: June 2013 |
|---|---|
| Specialty: Internal Medicine | Next office visit date: July 3 2014 |
| Address: as below | Telephone: 650 321-4121 |
| | Fax: — |
| Doctor's full name: Dr. Frye | Last office visit date: November 2013 |
| Specialty: Neurology | Next office visit date: May 15 2014 |
| Address: 795 El Camino Real Palo Alto CA 94301 | Telephone: 650. 321 - 4121 |
| | Fax: — |
| Doctor's full name: | Last office visit date: |
| Specialty: Neuropsychology | Next office visit date: — TBD |
| Address: 350 Parnassus Ave Suite 309 San Francisco CA | Telephone: 415 665 1875 |
| | Fax: 415 665 1881 |

Which physician is certifying your current disability status? Dr. Hosker + Dr. Frye

Please list all medication(s) that you are currently taking: — none — failed all medications

| Medication name | Prescribing doctor | Date prescribed | Dosage & frequency taken |
|---|---|---|---|
| | | due to significant side effects | |
| | | ↑ confusion and ↓ motor skills with no improvement. | |
| with The degenerative condition — there is no improvement with medications | | | |

**4** **Personal Care**

What time do you normally get up? 730          What time do you normally go to bed? 1130

Do you have any trouble sleeping? ☐ Yes ☑ No          Do you take naps? ☐ Yes ☑ No

Describe any changes in your sleeping habits since your condition began:

_____

_____

_____

Do you need any assistance in dressing and/or grooming? ☐ Yes ☑ No

If yes, who provides you with assistance?

_____

_____

**Prudential**

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Kathleen | | Murphy | N94B049 |

**4** | **Personal Care (Cont'd)**

Do you require the use of an assistive device such as a cane/a walker/a wheelchair/a scooter to help with walking or ambulation? ☐ Yes ☑ No

If yes, please describe below the help or assistive device(s) that you utilize:

Do you have any problems with your memory? ☑ Yes ☐ No

If yes, please describe below the problems **and** how often they occur:

All the time – especially short term. Where I parked car. Numbers, what I had previously purchased at store. Where I put things. Formal names, dates and details. Especially difficult with calendar, dates, days of week.

Do you prepare your own meals? ☑ Yes ☐ No

If yes, which meals do you prepare? ☑ Breakfast ☑ Lunch ☑ Dinner

If you do not prepare your own meals, who helps you?

**5** | **Transportation**

Do you have a valid driver's license? ☑ Yes ☐ No        Do you drive? ☑ Yes ☐ No

If you do not drive, has your doctor restricted you from driving? ☐ Yes ☐ No

If you do drive, how many times per week do you drive? _daily_

What is the distance you can travel as a driver? ≈ 10 miles

What is the distance you can travel as a passenger? _____ miles  none

**Prior** to your disability absence:

What was the distance you could travel as a driver? ≈ 80 miles

What was the distance you could travel as a passenger? _____ miles  none

Do you take public transportation? ☐ Yes ☑ No        Do you need assistance with travel? ☑ Yes ☐ No

If you do require assistance with travel, please describe below why you need assistance; who assists you; and, any changes that have impacted your ability to travel <u>since</u> your condition began:

I am very uncertain about public transportation. + Reading maps + determing stops, etc


*691117*

# Prudential

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Cathleen | | Murphy | 11943d99 |

**6 Household Care**

Do you live alone? ☐ Yes ☑ No

If no, please check who lives with you: ☐ Spouse ☐ Partner ☑ Relative ☐ Friend ☐ Roommate

If you are married/have a partner, what is your spouse or partner's name? _____

What is your spouse or partner's date of birth? _____

Does your spouse/partner work? ☐ Yes ☐ No       What is their occupation? _____

Do you have dependent children? ☐ Yes ☑ No

If yes, please provide the following information:

| Dependent name: | Date of birth: |
|---|---|
| Dependent name: | Date of birth: |
| Dependent name: | Date of birth: |
| Dependent name: | Date of birth: |

Are you responsible for the financial management of your household? ☑ Yes ☐ No

If you are responsible for the financial management of your household, explain below what you do (for example, write checks/pay mortgage/ maintain financial records/make bank deposits/etc.):

_Most everything I have it set up for auto-pay. I rarely write a check._

If you are not responsible for the financial management of your household, who is responsible: _____

Do you have a power of attorney? ☐ Yes ☑ No

If yes, please confirm below the name of the individual and relationship. Be sure to attach a copy of the power of attorney record (if you haven't already) to this document for file records.

Name: _____       Relationship: _____

Do you perform any type of housework? ☑ Yes ☐ No

If you perform housework, check the kinds of household activities you do:

☐ Car Care ☐ House Painting ☐ Lawn Care ☑ Trash
☑ Dusting ☐ Household Repair ☐ Mopping ☐ Vacuuming
☐ Gardening ☑ Laundry ☐ Recycling ☑ Washing Dishes
☐ Other  Specify _____

How often do you do household activities? ☐ Daily ☐ Twice a week ☐ Weekly ☐ Monthly ☑ If needed

Approximate time spent on household activities: _____ Daily _____ Weekly _____ Monthly

If you **do not** perform the above mentioned household activities, who is responsible for assisting you with these duties?

_Weekly help on garbage from son_

Please explain below specifically what household activities you **can not** do and why you can not do them:

_I don't have skills for home repair. Home repairman would be used if needed_



**Prudential**

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Colt Webb | | MURPHY | 1194 3045 |

### 6 Household Care (Cont'd)

Please check which item best describes your home situation:
☑ One level ☐ Bi-level ☐ Multi-level
☐ Apartment with elevator ☐ Apartment without elevator
☐ Other   Please describe

If you have child care responsibilities, as a parent, grandparent or baby-sitter, check any of these roles you provide, and answer the following questions on what child care activities you provide:

☐ Bathing ☐ Feeding ☐ Reading ☐ Transportation to School/Sporting Events
☐ Carrying ☐ Infants ☐ School Age ☐ Volunteer for School
☐ Changing Clothes ☐ Lifting ☐ Toddlers ☑ Volunteer for Sports Leagues
☐ Changing Diapers ☐ Play Activities
☐ Other  Specify _____

*None*

Approximate time spent on childcare activities: _____ Daily _____ Weekly _____ Monthly

Do you require assistance to perform any of these childcare activities?  ☑ Yes  ☐ No

If you require assistance to perform childcare activities, please describe below the assistance you need; who provides this assistance; and how frequently you require this assistance:

_____
_____
_____
_____

### 7 Interests and Hobbies

Do you shop?  ☑ Yes  ☐ No

What kinds of shopping do you do?  ☐ Clothes  ☑ Food  ☐ Gifts  ☑ Other  Specify *household items (laundry, cleaning et)*

How often do you shop?  _____ Daily  ☑ twice a week _____ Weekly _____ Weekends _____ Monthly

Approximate time spent on shopping: _____ Daily  *2 hr* Weekly _____ Monthly

Do you require an assistance when you shop?  ☐ Yes  ☑ No

If you require an assistance when you shop, please describe below the assistance that you require:

_____
_____

Do you read?  ☐ Yes  ☑ No

If you read, what do you read?  ☐ Books/Novels  ☐ Magazines  ☐ Newspapers  ☐ Other  Specify _____

Approximate time spent reading: _____ Daily _____ Weekly _____ Monthly

Do you watch TV?  ☑ Yes  ☐ No  If yes, how many hours do you watch daily?  *3 or 4*

What types of hobbies or activities do you participate in? (please check all that apply)

☐ Aerobics ☐ Crafts ☐ Gym ☐ Movies ☐ Swimming
☐ Bicycling ☐ Fishing ☐ Hunting ☐ Running ☐ Tennis
☐ Bowling ☐ Golf ☐ Knitting ☐ Sewing
☐ Other Sports  Specify *Sewing*

Do you walk for exercise?  ☑ Yes  ☐ No

Approximate time spent walking:  *1* Daily _____ Weekly _____ Monthly

How far do you walk?  *2 miles*  Does someone walk with you?  ☐ Yes  ☑ No

If yes, who?  *on a treadmill*

Do you own a computer?  ☑ Yes  ☐ No



# Prudential

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Colleen | | MURPHY | 11943049 |

**7** **Interests and Hobbies (Cont'd)**

What do you use your computer for? *Checking email or internet viewing*

Other hobbies/interests not mentioned, please specify: _____

How often do you spend time on any given activity or hobby? ____ Daily ____ Twice a week ____ Weekly ____ Weekends ____ Monthly

What is the amount of time you spend on each activity/hobby mentioned? _____

**8** **Social Contacts**

Are you an active member of any club(s) or community organization(s)? ☐ Yes ☑ No

If yes, how often do you participate in these activities? _____

Please provide below the names, addresses and phone numbers for these organizations:

_____

Do you perform any volunteer work? ☐ Yes ☑ No

If yes, please provide below the name of the volunteer program, describe your volunteer activities, frequency of participation, and scheduled hours of participation:

_____

Do you visit with friends or relatives? ☑ Yes ☐ No

How often do you visit? ____ Daily ____ Twice a week ____ Weekly ____ Weekends ☑ Monthly

Estimate how long these visits last (i.e. number of hours): *if they visit - they stay the night 8 hrs*

**9** **Ongoing Education/ Training**

Check your highest level of *formal* education completed:

Elementary school: ☐1 ☐2 ☐3 ☐4 ☐5 ☐6 ☐7 ☑8

Secondary school: ☐9 ☐10 ☐11 ☑12 ☐GED

College/University: ☐13 ☐14 ☐15 ☑16 Name of College/University: *U N Colorado*

Post Graduate: ☑ Name of College/University: *UCSF*

Are you presently attending college? ☐ Yes ☑ No   For a degree? ☐ Yes ☐ No   Type: _____

Name of college: _____

Address: _____

Number of years completed: _____  Anticipated graduation date: _____

Area(s) of concentration: _____

Are you presently pursuing any vocational training? (i.e. formal training obtained through business, vocational, or other training institutions.)

☐ Yes ☑ No  Where? _____

When? _____  Length of training? _____



**Prudential**

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Cutuleen | | MURPHY | VI 943644 |

**9** **Ongoing Education/ Training (Cont'd)**

Certificates or licenses obtained: _RN, Nurse Practitioner_

Have you, or, are you presently pursuing any other training or adult classes in computers, personal finance, real estate, crafts, art, etc.?

☐ Yes ☑ No

If yes, please note below the type of classes, facility name and location, frequency of classes, duration, and dates of classes:

---

**10** **Return to Work Effort**

Have you participated in a rehabilitation or retraining program? ☐ Yes ☑ No

If you have participated in a rehabilitation or retraining program, provide below the name of the program, along with the address and telephone number of the provider, counselor name, and the dates of the program:

Are you currently working? ☐ Yes ☑ No     If yes, how many hours per week do you work? _____

Please provide below the name and address of the employer, position held, and current salary:

Have you attempted working since this claim began? ☐ Yes ☑ No

If yes, please provide below the name and address of the employer, position held, salary, and the reason you stopped working. Additionally, please confirm the dates you worked.

Are you self-employed? ☐ Yes ☑ No

If yes, please describe below:

---


*6 9 1 1 7 *

# Prudential

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Kathleen | | MURPHY | 11943849 |

**10  Return to Work Effort (Cont'd)**

If you are not presently working, do you believe that you will be able to return to work? ☐ Yes ☑ No

If you do **not** believe that you will be able to return to work, describe below the reason(s) supporting your belief:

I'm experiencing a slow but continual decline in my cognitive ability thinking, memory, speech and writing. I can't process what I read if it's complied or has a lot of data. I can't keep concentration on listening nor reading. Can't solve complex thinking.

**11  Other Income**

Please report all the current sources of income you receive and the amount received from each source:

| Type of Income | Please check | | Effective Date | Amount of Benefit |
|---|---|---|---|---|
| Social Security Disability - Primary* | ☐ Yes | ☑ No | | |
| Social Security Disability - Family* | ☐ Yes | ☑ No | | |
| Social Security Retirement* | ☐ Yes | ☑ No | | |
| Social Security Survivor* | ☐ Yes | ☑ No | | |
| Pension and/or Retirement Benefits* | ☐ Yes | ☑ No | | |
| Workers' Compensation Benefits* | ☐ Yes | ☑ No | | |
| Individual or group disability benefits secondary to this claim coverage | ☐ Yes | ☑ No | | |
| Any other type of government benefits* | ☑ Yes | ☐ No | 5-31-13 | Weekly SDI |
| Other | ☐ Yes | ☑ No | | for $1067 wk |

*If not previously provided, attach a copy of any award/denial notice you have received. *attached*

**12  Social Security Application Information**

Please provide the status of your Social Security Disability claim. (check all that apply)

☑ No application filed    ☐ Approved    Date approved: _____

☐ Pending Level (please circle level)   Initial, Reconsideration, Administrative Law Judge, Date: _____

☐ Denied Level (please circle level)   Initial, Reconsideration, Administrative Law Judge, Date: _____

Appeal Filed (on most recent denial): ☐ Yes   Date filed: _____   ☐ No

(Please provide copies of correspondence from Social Security regarding status of application.)

Do you have an attorney or an agency representing you in your claim for Social Security Disability Benefits, or for any other type of income benefit?
☑ Yes   ☐ No

If you have an attorney or agency representing you, please provide name, address and telephone number:

Kantor + Kantor



 **Prudential**

## Activities of Daily Living Questionnaire

| First Name | MI | Last Name | Claim Number |
|---|---|---|---|
| Cathleen | | MURPHY | 11943049 |

**13 Claimant Signature**

**FLORIDA RESIDENTS** — Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**NEW YORK RESIDENTS** — Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. This notice ONLY applies to accident and disability income coverage.

I have read and understand the terms and requirements of the fraud warnings included as part of this form. I certify that the above statements are true.

X _____

Claimant Signature

Date Signed (MM DD YYYY): 2 27 2014

If someone other than the insured has completed form, please provide the name and telephone number below.

Printed name _____   Telephone number _____

X _____

Signature

Date Signed (MM DD YYYY): _____

**For residents of all states except Alabama, Arizona, California, the District of Columbia, Florida, Kentucky, Maryland, New Jersey, New York, Pennsylvania, Rhode Island, Utah, Vermont, Virginia and Washington; WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurance company or other person, or knowing that he is facilitating commission of a fraud, submits incomplete, false, fraudulent, deceptive or misleading facts or information when filing an insurance application or a statement of claim for payment of a loss or benefit commits a fraudulent insurance act, is/may be guilty of a crime and may be prosecuted and punished under state law. Penalties may include fines, civil damages and criminal penalties, including confinement in prison. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant or if the applicant conceals, for the purpose of misleading, information concerning any fact material thereto.

002386

SSN: 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  NAME: CATHLEEN A MURPHY                    DATE ISSUED: 01/31/14   PAGE  1

--- PLEASE DISREGARD THE FORM ON THE BACK OF THIS STUB - DO NOT RETURN

---

KEEP THIS STATEMENT FOR YOUR RECORDS.                    DATE ISSUED: 01/31/14
SSN: 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   NAME: CATHLEEN A MURPHY               CLAIM EFFECTIVE DATE: 06/01/13
WEEKLY RATE: $1067.00       WEEKLY RATE IS FOR 7-DAYS
THIS IS YOUR NOTIFICATION OF AUTHORIZED BENEFIT PAYMENT(S) FOR THE PERIOD LISTED BELOW. EXCEPT FOR THE
MANDATORY 7-DAY WAITING PERIOD, YOU WILL BE PAID FOR EVERY DAY YOU ARE ELIGIBLE FOR BENEFITS, INCLUDING
WEEKENDS.

IF YOU ARE NOT PAID FOR ANY DAYS, YOU WILL BE NOTIFIED WHICH DAYS WERE NOT PAID AND WHY THEY WERE NOT PAID
IN THE MESSAGE AREA BELOW.  THE OFFICE PROCESSING YOUR CLAIM IS:
                          EMPLOYMENT DEVELOPMENT DEPARTMENT              (800) 480-3287
                          P O BOX 193534
                          SAN FRANCISCO  CA   94119-3534
YOUR BENEFIT PAYMENT COVERS THE FOLLOWING PERIOD(S): 01/14/14 THROUGH 01/29/14.

| NO. OF DAYS | BENEFIT AMT. | AMT. DEDUCTED | AMT. PAID |
|-------------|--------------|---------------|-----------|
| 16          | $2438.86     | $0.00         | $2438.86  |

MESSAGE-AREA

  IMPORTANT NOTICE:    IF YOU DO NOT UNDERSTAND ANY FORM SENT TO YOU BY THIS OFFICE, CONTACT US FOR
  ASSISTANCE AT THE TELEPHONE NUMBER SHOWN ABOVE.

EMPLOYMENT DEVELOPMENT DEPT    D002386                    1184
P O BOX 193534
SAN FRANCISCO  CA   94119-3534

                                                         01/30/14      EDD Employment
                                                                           Development
                                                                           Department
                                                                       State of California

PLEASE READ THE IMPORTANT MESSAGE AND THE REVERSE SIDE OF THIS FORM
YOUR PAYMENT IS BEING MADE VIA DEBIT CARD. IF YOU DO NOT ALREADY HAVE A CARD IT SHOULD
ARRIVE IN NO MORE THAN 5 BUSINESS DAYS FROM THIS NOTICE. IF BEYOND THAT CONTACT EDD.

                          CATHLEEN A MURPHY
                          751 LAUREL ST # 908
                          SAN CARLOS  CA   94070-3113

DE 2500E Rev. 2 (8-11)                                                  CU-PA062

# CATHY MURPHY

28 Granite Court ▪ San Carlos, California 94070 ▪ (650) 867-2345 ▪ cathymurphy@aol.com

## SUMMARY

A driven and innovative TOP HUMAN RESOURCES LEADER with proven global experience architecting scalable, best practice initiatives that align human capital to business objectives. Effectively implements leadership development, succession planning, talent management, business optimization through organizational design and staff competencies, and companies' core values adoption. Proven change agent who establishes market dominance for hiring by creating employer value propositions with emphasis on total rewards and employee engagement and mitigating risks through program compliance and defensible employment practices. A passionate and committed thought partner creating human capital and business solutions which support great workplaces, market growth, and profitability.

| | |
|---|---|
| *Change Management* | *Total Rewards & Employer Value Proposition* |
| *Employee Engagement* | *Management Business Partner* |
| *Human Resources Transformation* | *Performance & Talent Management* |

## EXPERIENCE

BLUE SHIELD OF CALIFORNIA, San Francisco, California
*Vice President, Human Resources Operations and Wellness* ................................................................................................ 2005-2013
*Director, Employee Relations and Human Resource Services* ................................................................................................ 2004-2005

Leading up to 87 employees, took on newly developed vice president role after leading successful deployment of human capital transformation and operational excellence, business-integrated people strategy, and competitive total value creation. Served as senior executive leadership team member and corporate officer with responsibility for all aspects of human resources infrastructure and operations, including total rewards compensation and benefits, wellness, talent management, technology and architecture, talent management and diversity, employee relations and engagement, analytics, legal compliance, employee shared services, employment and code of conduct policies, workers' compensation, absence management, safety, and corporate security.

- **HUMAN CAPITAL STRATEGY:** Co-created and executed five-year human capital strategy built on value-based model of delivering strategic solutions to business partners. Developed technical architecture for human resource products. Delivered employee and manager self-service and foundation of human resource excellence for mass transactions, enabling strategic goal of great work place using levers of leadership role, talent practices, and employee experience.

- **TOTAL REWARDS:** Transformed all aspects of compensation, benefits, retirement, and employment experiences into a total rewards package threading the needle between affordability, market competitiveness, performance motivator, and generational preferences. All aspects of design, leadership and finance alignment, BOD (Compensation Committee) approval, and implementation.

- **ENGAGEMENT:** Long-term strategy for employee engagement and experience resulting in reduced employee total turnover from 34% to 12% and voluntary turnover from 23% to 6% by creating strong employer value proposition, market competitive total rewards package, and multi-year employee engagement initiative.

- **TALENT MANAGEMENT:** Co-led leadership talent management and executive succession planning initiatives, filling 65% of internal management roles from internal pipeline and eliminating c-suite internal successor gap in majority of positions.

- **BUSINESS PARTNER** Established collaborative partnerships with business unit leadership to develop human capital approaches which enable their business strategy such as succession planning, staff competencies and organizational design.

- **HIRING:** Developed scalable talent acquisition and sourcing model supporting rapid hiring needs of 1,800 employees, resulting in exceptional performance metrics of 97% accept rate and time to fill period of exempt jobs at less than 42 days.

- **PROGRAM IMPLEMENTATION:** Earned president's award for 14-month value-based transformation, introducing manager and employee self-service tools for 35% cost reduction and implementation of online, error-free compensation, benefits, and employment actions via HRMS while increasing employee experience and consulting capability to business units. Created industry-leading employee shared services center with national recognition and speaking opportunities.

- **HEALTH AND WELLNESS:** Achieved president's award for design and launch of transformational next-generation integrated employee wellness program to reduce cost of healthcare with worldwide recognition for design in first year. Delivered innovative approaches, including social media, behavioral economics, and unique incentives leading to >95% participation, medical plan cost reduction for participant groups, and numerous national awards of achievement.

CALPINE CORPORATION, San Jose, California
*Senior Director, Compensation, Benefits, and Stock Plans* ............................................................................................................................... 2003-2004

Redesigned all compensation and bonus plans, benefit structure, and stock plan administration during vacancy of both compensation and benefits director as well as senior vice president of human resources during period of Enron-driven industry turmoil. Held responsibility for design and implementation of wholesale changes to compensation and benefit plans, ensuring newly required Sarbanes-Oxley compliance while maintaining all aspects of human resource operations in North America and the UK.

- Migrated from companywide profit-sharing bonus payout to business unit and team-based performance by business unit weighted with individual performance factors, allowing 30% pay for performance variances.
- Executed design and vendor changes in benefits, including medical and specialty plans voluntary benefits, disability and workers' compensation, tuition assistance, holidays, 401(k) plan record keeper, outsourcing, and shared services. Gained market competitiveness for pricing and product value while achieving $12,000,000 savings in first-year renewal.
- Mitigated class-action ERISA risk for plummeting stock price by removing company's stock as investment vehicle in employee 401(k) and deferred compensation plans.
- Gained approval by compensation committee for committee charter and market-based executive compensation pay strategy in response to legal and social pressures in energy industry.


M2 TALENT, INCORPORATED, Sligo, Republic of Ireland
*Co-Founder* .................................................................................................................................................................................................... 2001-2003

Developed human capital and talent management company as consultant to Jacobs Engineering to source and scope employees and contingent workers for project engineering, design, engineering, and construction management teams specific to biopharmaceutical industry. Served as sole human resource liaison supporting recruitment and special human resource programs during 18-month engineering and construction of Abbott Laboratories site in less-densely populated area in northwest Ireland.

- Led development of onsite health, safety, and environment policy for 1,200 employees, vendors, and subcontractors.
- Led 1,200-person construction management teams for development and construction phases.
- Directed project to achieve Irish national recognition for excellence in safety for achieving 500,000 construction hours without lost-time accident.


ELECTRON ECONOMY, INCORPORATED, Cupertino, California
*Vice President, Human Resources* .................................................................................................................................................................. 2000-2001

Held responsibility for performance management, building organizational capability, human resource technology, compensation and benefits, stock plans, global assignments, and company culture. Created all aspects of human resource infrastructure to support growth from 19 to 450 employees over one year with compensation, stock, benefits, recruitment and talent management programs, 401(k), workplace policy development, organizational redesign and team-building, online data bases and communication tools, legal compliance metrics, and performance management tools.

- Served as corporate officer in fast-paced start-up company, leading all human capital strategies and human resources teams with prioritization in hiring talent during extremely competitive market.
- Led creation of corporate values and brand identity with linkage to leadership and behavioral principles established in companywide performance reviews.
- Implemented first management and executive development programs directly linked to business strategy, including talent ranking process and core competency requirements.


NETSCAPE COMMUNICATIONS AND AOL, Dublin, Ireland/Sunnyvale, California/Dulles, Virginia
*Senior Director, Global Employee Services, AOL* ........................................................................................................................................... 1999-2000
*Director, Human Resource Europe, NSCP* ...................................................................................................................................................... 1998-1999
*Senior Director, Worldwide Compensation Benefits and Human Resource Technology, NSCP* ................................................................ 1996-1997

Held worldwide responsibility for total compensation, stock, retirement, traditional and non-traditional benefits, health and welfare plans, HRIS and technology tools, culture, performance management, total health and safety programs, and global mobility. Directed bi-coastal human resources staff. Initiated redesign and implementation of compensation systems through compensation committee to align pay for performance to company objectives, including MBOs, along with commission plans targeting new products and markets. Established all human resource program and broader corporate support to bring eight countries online in North and South America, Europe, Asia, and Australia within 12 months while residing as expatriate in Ireland.

- Supported headcount growth from 500 to 2,000 employees in under two years by creating unique employer value proposition, including being a part of creating the future and internal experiences to advance employees' careers.
- Deployed state-of-the-art 360-degree focal review and performance management process identifying 10% top talent at all levels of organization, leading process to invest in top employees through talent management, reward and recognition, mentoring, and development programs to reduce regrettable turnover rate below 2%.
- Executed more than ten acquisitions, including co-chair of acquisition team for purchase of Netscape with seamless integration of all payroll, compensation, benefit, and stock and retirement plan. Combined two defined contribution plans and converted $800,000,000 401(k) to TPA Fidelity within four months.
- Optimized human resource function, directing $56,000,000 annual benefit budget for per-employee benefit costs at 18% below peer companies and industry averages. Created best-in-class shared services system call center for worldwide support of 17,000 employees while reducing redundant headcount by 18% and 11 fulltime employees.
- Gained worldwide publicity and recognition of Netscape as archetype New Economy employer by supporting high-tech culture and inventing cutting-edge, onsite, non-traditional programs, including concierges, dogs at work, car detailing, mobile dental, hairdressing, massage and manicures, and parking lot go-cart racing.

## ADDITIONAL EXPERIENCE

BUSINESS HEALTH AFFILIATES, INC., San Carlos, California, *Co-Founder and Vice President, Business Development,* 1992-1996. Co-founded successful Silicon Valley-based small business offering nationwide, onsite, corporate health and compliance programs. Developed all aspects of business plan product offerings worth 85% of company's revenue stream. Established client relationships with over 250 market leaders and Fortune 500 companies, including Johnson & Johnson, Charles Schwab, Hewlett-Packard, Sun Microsystems, Oracle, Cisco, Fidelity Investments, Home Depot, Costco, Levi-Strauss, IBM, Merrill Lynch, and United Airlines.

AMDAHL CORPORATION, Sunnyvale, California, *Senior Manager, Human Resources,* 1988-1996 (Concurrent). Launched onsite occupational health program in 12,000-employee mainframe manufacturer. Supported 60% reduction in force, with resultant industry standards for legal compliance, workers' compensation, and FMLA interpretation during downsizing. Chartered integrated disability management program combining workers' compensation, SDI, STD, and LTD plans, reducing claim costs by $7,000,000 in first year with subsequent industry adoption across carriers. Earned president's award for developing programs to mitigate legal exposures.

UNITED AIRLINES, San Francisco, California, *Human Resources Manager, Corporate Medical Division,* 1986-1988. Held responsibility for nationwide employment screenings, including pre-employment and drug testing, OSHA compliance, respiratory and hearing conservation programs, disability and workers' compensation case management, flight officer physical examination and clearance, passenger in-flight medical ADA accommodation, and airline mechanic labor relations union interface.

## EDUCATION

UNIVERSITY OF CALIFORNIA, San Francisco, California
*M.S., Occupational Health and Legal Compliance*
*Adult Nurse Practitioner*

UNIVERSITY OF NORTHERN COLORADO, Greeley, Colorado
*B.S., Nursing*

## CERTIFICATIONS

AMERICAN COMPENSATION SOCIETY
*CCP, Certified Compensation Professional*
*CBP, Certified Benefits Professional*

## AFFILIATIONS

*Society of Human Resource Management* – Member
*HR C-Suite* – Member
*VP of HR & CHRO Network* – Member
*Blue Cross Blue Shield Association - Pension Board of Directors* – Elected Advisory Member

RECEIVED
MAR 2 5 2014
BY:_____

Kimmurra Chadwick
Disability Claim Consultant

 **Prudential**

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 86607
Fax: (877) 889-4885
**Website: www.prudential.com/mybenefits**
**Web Access Code: 43995**

March 20, 2014

Beth A. Davis                               Claimant: Cathleen Murphy
Kantor & Kantor, LLP                        Claim No.: 11943049
19839 Nordhoff St.                          Control No./Br.: 43995 / 01BHR
Northridge, CA 91324

Dear Beth A. Davis:

We are writing in reference to Ms. Murphy's claim for Long Term Disability (LTD) benefits through her employment with CALIFORNIA PHYSICIANS SERVICE.

We are writing to let you know we have determined that Ms. Murphy is medically eligible to receive LTD benefits. However, at this time we require an additional period of time to complete the determination on her claim for LTD benefits.

We are awaiting information regarding Ms. Murphy's date of disability (when Ms. Murphy ceased working part time and was considered totally disabled), days in which Ms. Murphy worked during the Elimination Period, earnings and job description.

This letter is being sent to advise you that we are unable to make a determination on Ms. Murphy's claim at this time. We require an additional period of time to make a determination on Ms. Murphy's claim for LTD benefits.

**When Are You Disabled?**
You are disabled when you are either *totally disabled* or *partially disabled.*

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

**Physical Examination:**
Prudential, at our expense, shall have the right and opportunity to examine you when and as often as we may reasonably require during the pendency of a claim. Refusal to be examined may result in denial or termination of your claim.

**When Are You Totally Disabled?**
You are totally disabled when as a result of your *sickness* or *injury*:
- you are unable to perform with reasonable continuity the *substantial and material acts* necessary to pursue your *usual occupation*; and
- you are not working in your usual occupation.

After 24 months of payments, you are totally disabled when, as a result of the same sickness or injury, you are unable to engage with reasonable continuity in any occupation in which you could

reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth.  Disability must begin while you are covered under the plan.

*Injury* means physical harm or damage of the body.  Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

*Substantial and material acts* means the important tasks, functions and operations generally required by employers from those engaged in your usual occupation that cannot be reasonably omitted or modified.  In determining what substantial and material acts are necessary to pursue your usual occupation, we will first look at the specific duties required by your Employer or job.  If you are unable to perform one or more of these duties with reasonable continuity, we will then determine whether those duties are customarily required of other employees or individuals engaged in your usual occupation.  If any specific, material duties required of you by your Employer or job differ from the material duties customarily required of other employees or individuals engaged in your usual occupation, then we will not consider those duties in determining what substantial and material acts are necessary to pursue your usual occupation.

*Usual occupation* means any employment, business, trade or profession and the substantial and material acts of the occupation you were regularly performing for your Employer when the disability began.  Usual occupation is not necessarily limited to the specific job you performed for your Employer.

**When Are You Partially Disabled?**
You are partially disabled when:
- you are not totally disabled; and
- while actually working in your usual occupation, and as a result of your sickness or injury, you are unable to earn 80% or more of your *indexed monthly earnings*.

After 24 months of payments, you are partially disabled when:
- you are not totally disabled; and
- while actually working in an occupation, and as a result of the same sickness or injury, you are unable to engage with reasonable continuity in that or any other occupation in which you could reasonably be expected to perform satisfactorily in light of you are, education, training, experience, station in life, and physical and mental capacity.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the current annual percentage increase in the Consumer Price Index.

Your indexed monthly earnings may increase or remain the same, but will never decrease.  The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.  Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

**How Long Must You Be Disabled Before Your Benefits Begin?**

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period.

The days that you are not disabled will not count toward your elimination period.

Your elimination period is 180 days.
*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

**Can You Satisfy Your Elimination Period If You Are Working?**

Yes. If you are working while you are disabled, the days you are disabled will count toward your elimination period.

In addition, the policy states:

**What Information Is Needed as Proof of Your Claim?**

Your proof of claim, provided at your expense, must show:

1. That you are under the regular care of a doctor.
2. The appropriate documentation of your monthly earnings.
3. The date your disability began.
4. Appropriate documentation of the disabling disorder.
5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.
6. The name and address of any hospital or institution where you received treatment, including all attending doctors.
7. The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

We will contact you within 30 days with the status of our evaluation if a decision has not yet been rendered.

You may check the status of your claim by visiting our website **www.prudential.com/mybenefits.** If you are a first time user, you will need your access code to register. **Your access code is 43995.**

Additionally, you may contact one of our representatives who will be happy to answer any questions you may have. To speak with a representative, call the phone number shown on the first page of this letter, Monday through Friday from 8:00 a.m. to 11:00 p.m., Eastern Time.

Sincerely,
*Kimmurra Chadwick*
Kimmurra Chadwick
Disability Claim Consultant

**Michelle Cipres**

| | |
|---|---|
| **From:** | Kimmurra Chadwick <kimmurra.chadwick@prudential.com> |
| **Sent:** | Monday, March 31, 2014 10:16 AM |
| **To:** | Michelle Cipres |
| **Subject:** | Cathleen Murphy- claim #11943049 |

Good afternoon,

We are continuing our review of Ms. Murphy's claim for LTD benefits.  New information regarding Ms. Murphy's claim has been learned which has created the need to have further clarification around Ms. Murphy's date of disability.

Ms. Murphy's employer has confirmed that Ms. Murphy was expected to work through August 31, 2014.  Additionally, Ms. Murphy was placed on administrative leave effective September 1, 2013 and received full pay through the end of December 2013. In light of this new information please have Ms. Murphy provide a response to the below inquiries:

1. Which doctor supported or advocated that Ms. Murphy work part time (4 days per week) from 5-23-14 to 8-31-14?

2. Did Ms. Murphy actually part time from 5-23-14 to 8-31-14?

3. What did part time work consist of and was Ms. Murphy working in her in usual occupation as VP HR Ops & Wellvolution during this time?

Thank you in advance for your assistance.

Kimmurra Chadwick
Disability Claim Consultant

| SENDER: *COMPLETE THIS SECTION* | *COMPLETE THIS SECTION ON DELIVERY* |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X      □ Agent   □ Addressee<br>B. Received by (*Printed Name*)    C. Date of Delivery<br>**Sedale Smith** |
| 1. Article Addressed to:<br><br>Prudential<br>P.O. Box 13480<br>Philadelphia<br>PA 19116 | D. Is delivery address different from item 1? □ Yes<br>If YES, enter delivery address below: □ No<br><br>0 4 09 1 4 |
| | 3. Service Type<br>☑ Certified Mail® □ Priority Mail Express™<br>☑ Registered ☑ Return Receipt for Merchandise<br>□ Insured Mail □ Collect on Delivery |
| | 4. Restricted Delivery? (*Extra Fee*) □ Yes |
| 2. Article Number<br>(*Transfer from service label*) | 7012 3460 0002 9448 3834 |
| PS Form 3811, July 2013      Domestic Return Receipt | |



**KANTOR** LLP
**& KANTOR**

19839 NORDHOFF STREET • NORTHRIDGE • CA 91324
TEL (818) 886-2525 • FAX (818) 350-6272
WWW.KANTORLAW.NET

April 4, 2014

*__Certified Mail - Return Receipt Requested and__*
*__Email: kimmurra.chadwick@prudential.com__*
Kimmurra Chadwick
Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480
Philadelphia, PA 19176

Re:     Name: Cathleen A. Murphy
        Claim Number: 30130807846-0001
        Plan/Policy Holder: Blue Shield of California

Dear Ms. Chadwick:

        We are writing to Prudential to respond to the questions you asked in your recent email.

You asked:
    (1) Which doctor supported or advocated that Ms. Murphy work part time?
    (2) Did Ms. Murphy actually work part time?
    (3) What did the part-time work consist of and was Ms. Murphy working in her usual
        occupation of VP HR Ops & Wellvolution during this time?

    In response to your first question, it was Ms. Murphy's internist, Dr. Margaret Forsythe, who
recommended that Ms. Murphy stop working altogether. However, owing to her excellent work
ethic and with great difficulty, Ms. Murphy insisted on trying to work part time from the period
of May 8, 2013 – August 27, 2013, in order to assist her employer with the transition of her job
to another person. In response to your second and third questions, we have enclosed a statement
drafted by attorney Beth D. Perez based on information provided from Ms. Murphy that we
believe fully addresses your questions regarding whether she worked part time and in what
capacity she worked during that period.

        Additionally, we wish to point out to Prudential that it has already determined Ms.
Murphy is disabled, and has been since May 2013. She stopped working completely as of
August 28, 2013. She became eligible for LTD benefits in November 2013. While we realize

Kimurra Chadwick
Prudential Insurance Company of America
Re: Cathleen A. Murphy – Payment of Benefits
April 4, 2014
Page 2

the fact that she was compensated through December 2013 requires you to receive information
on her loss of income to determine the amount of the benefits owing for that period, it does not
allow Prudential to withhold benefits owed as of January 1, 2014. As of January 1, 2014, Ms.
Murphy has neither worked a single day nor received any earned income. Accordingly she is
currently owed a minimum of three full months of benefits. Ms. Murphy requires these funds to
pay her bills, and Prudential should issue a check for this period immediately.

Finally, Ms. Murphy is concerned that her coverage will lapse if she does not pay the
premiums for this policy. It is our contention that Ms. Murphy currently owes no premiums for
this policy as Prudential has determined that she is disabled and thus, the policy's waiver of
premium benefit applies. Please confirm in writing that this is accurate.

Should you have any questions, please feel free to contact either Glenn Kantor or Beth
Perez.

Very truly yours,
Kantor & Kantor, LLP

Beth D. Perez, Esq.

Encls.
Copy to: Cathleen Murphy

Reductions in Job Responsibilities and Transition of Role for Cathleen Murphy

Although the cognitive, language and memory aspects of her condition had been declining for more than one year, it was in early May 2013 in which Ms. Murphy's disability was so deeply affecting her work and personal performance that she made an appointment with her internist on an urgent basis. Having treated her for many years, she too, immediately noticed the deterioration and immediately placed Ms. Murphy on full disability.  Ms. Murphy told her physician that although she had placed her on disability, her role as Vice President of Human Resources was critical to the company. She urged to her physician to allow her to work in a partial capacity so as to transition her work to another employee. The doctor told Ms. Murphy it was clear she would not be able to successfully perform her role based upon the seizures, cognitive gaps and language deficiencies she was suffering.  Ms. Murphy's doctor urged her to take full disability as quickly as possible.

Ms. Murphy worked with her supervisor, disclosing her health condition and likely continued decline.  It was at that point that they made the decision to have Ms. Murphy immediately stop certain tasks in which her disability was most noticeable and impactful and begin the longer term transition of her duties.  Because there were many new senior leaders in the company, including Ms. Murphy's boss, and because she held one of the highest officer positions in the company for nearly 10 years, Ms. Murphy assured her new supervisor that she would remain available for the next few weeks on a part time basis– so as to ensure a successful transition.  Ms. Murphy's supervisor indicated that she would work with her in whatever way necessary. She stated to Ms. Murphy, "I will work with you in any way necessary. I don't care where, when or how you work, I just need you to help me transition your work." Even though Ms. Murphy was working part-time to aid in the transition of her duties, as stated above, some of her duties were immediately stopped as she could no longer perform them at all.  For example, she was immediately removed as the presenter at the BOD Compensation Committee Meeting scheduled the following week, and from any external speaking roles – as this was at highest risk for public awareness of her now evident language and cognitive decline.

Because she held a deep commitment to her role and the transition, even though she was already disabled, she began working limited hours per day and per week from May 8, 2013 – May 21, 2013. She then stopped working on full disability from May 22, 2013 - June 3, 2013. This full cessation of working resulted in no improvement in her health.  Thereafter, to continue aiding with the transition of her duties, she returned under short term disability as 'partially disabled." She worked in this manner from June 4, 2013 – August 27, 2013.  On August 28, 2013, having completed the final transfer of duties, she then stopped working completely as a result of her ongoing disability.

Examples of duties performed on a part-time basis to transition her role:

**Compensation, Benefits & Retirement**:

- She immediately limited her duties in this largest part of her job.  The Director of Compensation and Benefits began reporting directly to the Senior Vice President (Ms. Murphy's supervisor) as opposed to reporting to Ms. Murphy as had been the practice before her disability.   All aspects of the *very* active compensation, benefits and pension work immediately bypassed her as the former responsible person and went directly to the SVP.  Ms. Murphy ceased all leadership of the Compensation and Benefits group (staff meetings, oversight of compensation, bonuses, executive compensation, compensation work or planning, vendor presentations, etc. which now were being managed by the SVP directly).  Ms. Murphy's role became limited to offering of any historic experience and for transferring all institutional knowledge to the SVP's staff and onto the intranet.
- Her employer assigned the Director of Compensation and Benefits to assume Ms. Murphy's role externally on the National Employee Benefits Administration for Blue Cross and Blue Shield of America.
- Her employer assigned the Director of Compensation and Benefits to sit in Ms. Murphy's place at the upcoming BOD meetings for compensation.

**Human Resources Technology**:

- There were 3 areas of HR Technology for which Ms. Murphy had responsibility.  She immediately transferred the most critical aspect of technology to a non-HR business unit in the company, and the two remaining technology responsibilities (intranet and HRIS systems) were transferred to other HR departments.

**Employee Relations**:

- They immediately began a search for an outside candidate to assume the Employee Relations portion of Ms. Murphy's role – and transferred litigation areas to the internal Legal Group.

**Security:**

- Ms. Murphy immediately transferred the entire Corporate Security Function to the internal Facilities Group.

**Wellness:**

- Although earlier in year Ms. Murphy had initiated transferring the Wellness product that she founded for BSC over to the Health Care Service Group as a development move for the new leader she had hired, her disability and role reduction resulted in her transferring all remaining HR aspects of Wellness to the facilities group and HCS groups.

**Human Capital Strategy, Budget and Analytics**

- A critical part of Ms. Murphy's executive leadership was involved in planning, budgets, and setting Human Capital Strategy. She immediately limited her involvement in the Human Capital Planning to that of historically summarizing the group's history and past practices so as to inform their future decisions, as opposed to fully participating in future planning.  She did not attend the important off-site planning meetings which were held for the HR Leadership staff  on several occasions but rather attended only internal meetings on an as needed basis, with the objective of  her handing off institutional knowledge.
- As part of her transition, they created a new HR position and hired internally, immediately having the newly hired person assume all aspects of HR Budget Planning and management.
- All responsibilities for HR Analytics were immediately transitioned to this newly created role.

It would have been far easier on Ms. Murphy to have immediately gone on full disability on May 8, 2013, as her doctor urged, as opposed to trying to continue to work part-time, while disabled. But, because of her commitment to BSC, and her personal work ethic and values, she pushed through her disabling symptoms and forced herself to help support, albeit on a partial basis, the successful transition of her role, for which her employer was deeply appreciative and has thanked her for.

 **Prudential**

**Kimmurra Chadwick**
Disability Claim Consultant

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 86607
Fax: (877) 889-4885
Website: www.prudential.com/mybenefits
Web Access Code: 43995

April 24, 2014

Beth A. Davis
Kantor & Kantor, LLP
19839 Nordhoff St.
Northridge, CA 91324

Claimant: Cathleen Murphy
Claim No.: 11943049
Control No./Br.: 43995 / 01BHR

Dear Beth A. Davis:

I am writing to update on the status of Ms. Murphy's claim for Long Term Disability (LTD) benefits under Group Contract #43995 issued to California Physicians Service.

At this time we are continuing our investigation of Ms. Murphy's eligibility for LTD benefits. Since our last communication with your office we have provided Ms. Murphy's employer with a summary of Ms. Murphy's account of her job tasks provided to us on April 9, 2014. Ms. Murphy's employer has confirmed that Ms. Murphy was expected to work full time through August 31, 2013. She was then placed on Administrative Leave from September 1, 2013 through her termination date. This information has impact on Ms. Murphy's date of disability. Given this information and the fact that Ms. Murphy was paid full salary through the end of 2013 there is no evidence that Ms. Murphy was not performing the Material and Substantial duties of her regular occupation. As a result, Ms. Murphy's date of disability is in question. In order to try and determine if Ms. Murphy was performing the Material and Substantial duties of her regular occupation we have requested a vocational specialist to perform a Regular Occupation review of her job requirements and the tasks that she was expected to perform from May 2013 through August 31, 2013.

Additionally, review of information received after our initial medical review reveals that Ms. Murphy is not receiving any treatment relative to the condition for which she is seeking disability. Considering this information along with the fact that it appears as though Ms. Murphy was performing the Material and Substantial duties of her regular occupation we have determined the need to re-evaluate Ms. Murphy's medical file and our prior review.

As stated during our discussion the normal turn-around time for a medical review is 7-10 days. I will update you if additional information or time is needed. Additionally, you will inquire with Ms. Murphy as to whether or not she has had an MRI of the Brain prior to May 2013.

If you have any questions, please contact our office at (800) 82-1718, ext 86607.

Sincerely,

*Kimmurra Chadwick*

Kimmurra Chadwick
Disability Claim Consultant

 **Prudential**

RECEIVED
MAY 2 7 2014
BY:_____

**Kimmurra Chadwick**
Disability Claim Consultant
The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 86607
Fax: (877) 889-4885
**Website: www.prudential.com/mybenefits**
**Web Access Code: 43995**

May 21, 2014

Beth A. Davis                                    Claimant: Cathleen Murphy
Kantor & Kantor, LLP                             Claim No.: 11943049
19839 Nordhoff St.                               Control No./Br.: 43995 / 01BHR
Northridge, CA  91324

Dear Beth A. Davis:

We are writing in reference to Ms. Murphy's claim for Long Term Disability (LTD) benefits through her employment with CALIFORNIA PHYSICIANS SERVICE.

This letter is being sent to advise you that we are unable to make a determination on Ms. Murphy's claim at this time. We require an additional period of time to make a determination on her claim for LTD benefits.

**When Are You Disabled?**
You are disabled when you are either *totally disabled* or *partially disabled.*

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

**Physical Examination:**
Prudential, at our expense, shall have the right and opportunity to examine you when and as often as we may reasonably require during the pendency of a claim. Refusal to be examined may result in denial or termination of your claim.

**When Are You Totally Disabled?**
You are totally disabled when as a result of your *sickness* or *injury*:
- you are unable to perform with reasonable continuity the *substantial and material acts* necessary to pursue your *usual occupation*; and
- you are not working in your usual occupation.

After 24 months of payments, you are totally disabled when, as a result of the same sickness or injury, you are unable to engage with reasonable continuity in any occupation in which you could reasonably be expected to perform satisfactorily in light of your age, education, training, experience, station in life, and physical and mental capacity.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means physical harm or damage of the body.  Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

*Substantial and material acts* means the important tasks, functions and operations generally required by employers from those engaged in your usual occupation that cannot be reasonably omitted or modified.  In determining what substantial and material acts are necessary to pursue your usual occupation, we will first look at the specific duties required by your Employer or job.  If you are unable to perform one or more of these duties with reasonable continuity, we will then determine whether those duties are customarily required of other employees or individuals engaged in your usual occupation.  If any specific, material duties required of you by your Employer or job differ from the material duties customarily required of other employees or individuals engaged in your usual occupation, then we will not consider those duties in determining what substantial and material acts are necessary to pursue your usual occupation.

*Usual occupation* means any employment, business, trade or profession and the substantial and material acts of the occupation you were regularly performing for your Employer when the disability began.  Usual occupation is not necessarily limited to the specific job you performed for your Employer.

**When Are You Partially Disabled?**
You are partially disabled when:
- you are not totally disabled; and
- while actually working in your usual occupation, and as a result of your sickness or injury, you are unable to earn 80% or more of your *indexed monthly earnings.*

After 24 months of payments, you are partially disabled when:
- you are not totally disabled; and
- while actually working in an occupation, and as a result of the same sickness or injury, you are unable to engage with reasonable continuity in that or any other occupation in which you could reasonably be expected to perform satisfactorily in light of you are, education, training, experience, station in life, and physical and mental capacity.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the current annual percentage increase in the Consumer Price Index.

Your indexed monthly earnings may increase or remain the same, but will never decrease.  The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.  Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

In addition, the policy states:

**What Information Is Needed as Proof of Your Claim?**

Your proof of claim, provided at your expense, must show:

1. That you are under the regular care of a doctor.
2. The appropriate documentation of your monthly earnings.
3. The date your disability began.
4. Appropriate documentation of the disabling disorder.
5. The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

6.  The name and address of any hospital or institution where you received treatment, including all attending doctors.
7.  The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

At this time we cannot identify a psychological or physical impairment which would preclude Ms. Murphy from performing the requirements of her regular occupation. Additionally, Ms. Murphy's medical file lacks evidence to corroborate a neurological deficit which would support a cognitive impairment. As a result, we are currently unable to make a determination on Ms. Murphy's claim. We have requested Ms. Murphy's treating doctor, Dr. Frye comment on our opinion of her psychological, physical and cognitive functioning level. We have asked Dr. Frye to review and respond to our medical opinion by June 2, 2014.

We will contact you within 30 days with the status of our evaluation if a decision has not yet been rendered.

Additionally, you may contact one of our representatives who will be happy to answer any questions you may have. To speak with a representative, call the phone number shown on the first page of this letter, Monday through Friday from 8:00 a.m. to 11:00 p.m., Eastern Time.

Sincerely,
*Kimmurra Chadwick*
Kimmurra Chadwick
Disability Claim Consultant

Attachments:

 **Prudential**

**Group Disability Insurance**

The Prudential Insurance Company of America
Disability Management Services
P.O. Box 13480, Philadelphia, PA 19176
Tel: 800-842-1718   Fax: 877-889-4885
http://www.prudential.com/mybenefits

## Group Disability Insurance
## Electronic Funds Transfer Authorization

**1 Enrollment**

To enroll in Prudential's Electronic Funds Transfer (EFT) payment service, please provide the following information. If you elect to have Prudential deposit the funds in your savings account, you must first check with your bank to obtain the correct bank transit routing number and account number for electronic deposit. Please note that a deposit slip does not contain acceptable banking information. If you have any questions, please call us toll free at 800-842-1718.

**\*Please note that not all policies are designed to participate in the Electronic Funds Transfer option. Contact your employee benefits representative or disability plan trustee for details.**

**2 Claimant Information**

Employer's Name

Claimant's First Name | MI | Last Name

Social Security Number | Primary Phone Number

**3 Banking Information**

Bank Name

Branch Phone Number | Type of Account (Select One)
☐ Savings   ☐ Checking

Bank Transit Routing Number
(NINE-DIGIT BANK TRANSIT ROUTING NUMBER)

Bank Account Number
(BANK ACCOUNT NUMBER)

**4 Payment Plan Agreement**

I authorize the Prudential Insurance Company of America to make electronic fund deposits of my disability benefit payment to my account. I understand that any deposit made to an inactive account will be returned to Prudential and reissued as a manual check. In addition, if any overpayment of such disability benefits is credited to my account in error, I authorize Prudential to withdraw any payments necessary in order to assure the accuracy of my claim payments.

I can cancel this authorization at any time by giving Prudential written notice. Any notice hereunder will not be deemed effective until Prudential has received my written notice.

Account Owner
First Name | MI | Last Name

Street | Apartment

City | State | ZIP Code

Date Signed (MM DD YYYY)

X
Signature

 **Prudential**

**5** | **Instructions for Completing Section 3, "Banking Information"**

This will help you identify the necessary bank information to initiate electronic withdrawals. The nine-digit transit routing number is how we recognize the bank you do business with.

Record all banking information on page 1 of the form in Section 3, "Banking Information". Please call your bank to confirm that the information you are supplying is correct.

---

Customer XYZ
XYZ Street
City, State, ZIP

Check No. 1246

**PAY TO THE ORDER OF** _____ $ [          ]

**Dollars**

Bank XYZ
UXYZ Street
City, State, ZIP

A27202754          006666D66666C          1246

---

This is the bank transit routing number.

It is always nine digits and appears between the ":" symbols.

Record this number in the boxes provided in Section 3, "nine-digit bank transit routing number."

This is your bank account number. It varies in number of digits and may include dashes or spaces.

The "<" symbol indicates the end of the account number.

Record the account number in the boxes provided in Section 3, "Bank Account Number" and include any dashes and spaces that are within the account number.

If there are any digits to the right of the "<" symbol (which do not represent the check sequence number), record them in the boxes provided.

This is the check sequence number. It may be on either end of your check. Please do **not** include this on the authorization form.

*This page consists only of **Instructions:** It is not necessary to return this page with your EFT Authorization.*

© 2012 The Prudential Insurance Company of America.

Prudential, the Prudential logo and the Rock symbol are service marks of Prudential Financial, Inc. and its related entities, registered in many jurisdictions worldwide.