UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CATHLEEN MURPHY,
       Plaintiff,

    v.

CALIFORNIA PHYSICIANS SERVICE, et al.,

       Defendants.

Case No. 14-cv-02581-PJH

**ORDER RE STANDARD OF REVIEW**

Plaintiff's motion to determine the standard of review came on for hearing before this court on August 10, 2016. Plaintiff appeared by her counsel Corinne Chandler and Glenn Kantor, and defendants appeared by their counsel Linda Lawson. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS plaintiff's motion

**BACKGROUND**

This is an action under the Employee Retirement Security Act of 1974 ("ERISA") to recover long-term disability benefits. Plaintiff Cathleen Murphy was employed by Blue Shield of California ("Blue Shield") and was a participant in Blue Shield's Consolidated Group Welfare Benefit Plan ("the Plan"), which included the Long Term Disability Plan.

Plaintiff originally submitted her claim for benefits on December 23, 2013. She filed the complaint in the present action on June 4, 2014, alleging that the claims administrator, The Prudential Insurance Company of America ("Prudential"), had failed to timely respond to her claim. After the complaint was filed, Prudential issued a decision denying plaintiff's claim.

On June 20, 2014, plaintiff filed a first amended complaint ("FAC"), asserting a single cause of action for recovery of benefits, under 29 U.S.C. § 1132(a)(1)(B). Named as defendants are Prudential and California Physician Service d/b/a Blue Shield of California Long Term Disability Plan. Defendants answered the FAC on September 4, 2014.

After plaintiff filed a first appeal of the claim denial on October 21, 2014, the court informally stayed the present action pending resolution of the appeal. Prudential denied the first appeal on May 20, 2015, but offered plaintiff a second voluntary appeal, which plaintiff submitted on August 31, 2015. On December 9, 2015, Prudential issued a decision upholding its claim denial. On July 6, 2016, plaintiff filed the present motion for determination of the standard of review.

**DISCUSSION**

A.  Legal Standard

A motion for determination of the standard of review in an ERISA case is brought under Federal Rule of Civil Procedure 12(c), or, if matters outside the pleadings are presented to and not excluded by the court, is brought as a motion for partial summary judgment under Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(d).

A party may move for summary judgment on a "claim or defense" or "part of . . . a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Id. Here, the motion is directed solely at an issue of law, although both sides have submitted declarations with attached exhibits. Accordingly, the court treats the motion as one for partial summary judgment.

B.  The Plan

Blue Shield's eligible full-time employees, including plaintiff, are participants in the Plan, which is regulated by ERISA. Among the benefits offered through the Plan are short-term and long-term disability benefits. Prudential is the insurer of benefits for the Plan and acts as the Plan administrator. At issue in this case is plaintiff's application for

long-term disability benefits.

Blue Shield established the Plan under Group Contract G-43995-CA. See Declaration of Corinne Chandler in support of plaintiff's motion ("Chandler Decl."), Exh. C. Prudential issued the Group Contract to Blue Shield as the Contract Holder. Id. at 1. The Contract date is September 1, 2004, and contract anniversaries are September 1 of each year, beginning in 2005. Id. at 2.

By its terms, the "entire" Group Contract consists of the Group Insurance Certificate(s) (or "Certificate of Coverage") listed in the Schedule of Plans, attached to the Group Contract; all modifications and endorsements to the Certificate of Coverage which are attached to and made part of the Group Contract by amendment of the Group Contract; the forms shown in the Table of Contents as of the Contract Date; the Contract Holder's application, a copy of which is attached to the Group Contract; any endorsements or amendments to the Group Contract; and the individual applications, if any, of the persons insured. Id. at 6.

The Group Contract "may be amended at any time" without the consent of the insured employees, "through written request made by the Contract Holder and agreed to by Prudential." Id. at 6-7. However, "[n]o change in the Group Contract is valid unless shown in: (1) an endorsement on it signed by an officer of Prudential, or (2) an amendment to it signed by the Contract Holder and by an officer of Prudential." Id. at 7. An amendment may be made with only a Prudential officer's signature if the amendment was automatically made to comply with state or federal law or regulation, or the amendment reflects a change in Prudential's administration of group insurance benefits and is intended to apply to all group insurance contracts affected by the change. Id.

The current "Certificate of Coverage" for the short- and long-term disability plans is dated September 1, 2012. Chandler Decl., Exh. D at 2, 4. The Certificate of Coverage defines "Plan" as "a line of coverage under the Group Contract." Id. at 43. A "Summary Plan Description" is appended to the Certificate of Coverage. The cover page of the Summary Plan Description states that it "is not part of the Group Insurance Certificate"

3

1  and that it "has been provided by your Employer and included in your Booklet-Certificate
2  upon the Employer's request."  Chandler Decl., Exh. D.  The Summary Plan Description
3  also states that it is intended to comply with regulations issued by the U.S. Department of
4  Labor under ERISA, which requires that plan participants be given a "Summary Plan
5  Description" that describes the plan and informs participants of their rights under the plan.
6  Id.

7  In addition, Blue Shield prepared a document entitled "Blue Shield of California
8  Consolidated Group Welfare Benefit Plan – Summary Plan Description" ("employer Plan
9  Description"), which is dated January 1, 2009.  Chandler Decl., Exh. E.  This employer
10  Plan Description "describes the health and welfare benefits programs sponsored by Blue
11  Shield of California and made available to eligible employees of Blue Shield of California
12  through the Blue Shield of California Consolidated Group Welfare Plan . . . ."  Id. at 1.  It
13  states further that "if there is a conflict between what is written here, and the related
14  benefit program materials or the Plan, the related benefit program materials and Plan will
15  govern, unless otherwise governed by law."  Id. at 2.

16  C.  Plaintiff's Motion

17  Plaintiff argues that the court should review her claim for long-term disability
18  benefits de novo.  She notes that defendants bear the burden of proving a valid,
19  enforceable grant of discretion, and contends that the plan documents – the Group Policy
20  (Group Contract) and the Certificate of Insurance – do not contain a clear and
21  unambiguous grant of discretion.

22  Plaintiff asserts that only the employer Plan Description (prepared by Blue Shield)
23  contains a grant of discretion, but argues that under Supreme Court and Ninth Circuit
24  authority, a summary plan description is not a "plan document."  She argues that even if
25  the employer Plan Description were a "plan document," any grant of discretion would be
26  voided by operation of California Insurance Code § 10110.6.

27  The court finds that the motion must be GRANTED.  ERISA permits a person
28  denied benefits under an employee benefit plan to challenge that denial in federal court.

See 29 U.S.C. § 1132(a)(1)(B); Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008). In determining the appropriate standard of review for actions under ERISA, federal courts are guided by principles of trust law. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Courts should "analogize a plan administrator to the trustee of a common-law trust" and "consider a benefit determination to be a fiduciary act (i.e., an act in which the administrator owes a special duty of loyalty to the plan beneficiaries)." Glenn, 554 U.S. at 111.

"Principles of trust law require courts to review a denial of plan benefits 'under a de novo standard' unless the plan provides to the contrary," in which case a more deferential standard of review is appropriate. Id. (quoting Firestone, 489 U.S. at 115). Therefore, the "starting point" in determining the applicable standard of review is whether the terms of the ERISA plan "unambiguously grant discretion to the administrator." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 962-63 (9th Cir. 2006) (en banc) (emphasis added). Defendants bear the burden of proving an ERISA plan's grant of discretionary authority. See Prichard v. Metro. Life Ins. Co., 783 F.3d 1166, 1169 (9th Cir. 2015); see also Kearney v. Standard Ins. Co., 175 F.3d 1084, 1089 (9th Cir. 1999).

When the plan does not confer discretionary authority to the plan administrator to determine benefit eligibility or interpret the terms of the plan, a court must review the denial of benefits de novo (the default standard of review). Abatie, 458 F.3d at 963; see Glenn, 554 U.S. at 111; Kearney, 175 F.3d at 1089. De novo review means that the court "considers the matter anew, as if no decision had been rendered." Dawson v. Marshall, 561 F.3d 930, 932-33 (9th Cir. 2009); Liu v. Metro. Life Ins. Co., 2016 WL 4373859, at *5 (N.D. Cal. Aug. 16, 2016).

Here, the court finds that the appropriate standard of review is de novo. First, the Plan documents – the Group Policy (Group Contract) and the Certificate of Insurance – do not contain a grant of discretion. Defendants attempt to show that there is a grant of discretion in the Plan, but that very effort makes it clear that if there is a grant of discretion, it is far from clear and unambiguous. Neither the Group Contract nor the

5

1  Certificate of Coverage unambiguously states that Prudential has discretionary authority
2  to grant or deny benefits under the Plan, or discretionary authority to construe the terms
3  of the Plan.
4        Defendants contend that a grant of discretionary authority is found in certain
5  provisions of the Group Contract and the Certificate of Coverage – specifically, the
6  statement that "[i]f the provisions of the Group Contract do not conform to the
7  requirements of any state or federal law or regulation that applies to the Group Contract,
8  the Group Contract is automatically changed to conform with Prudential's interpretation of
9  the requirements of that law or regulation[,]" Chandler Decl. Exh. C, at 7; the statement
10 that the receipt of benefits is contingent upon Prudential "determin[ing] whether
11 satisfactory proof of disability has been submitted in accordance with the rules in this
12 section and applicable California law[,]" Chandler Decl. Exh. D, at 21; and the statement
13 that Prudential has the responsibility to "evaluate and determine" the eligibility for benefits
14 for any claim made under the Group Contract, id. at 38.
15       Similar arguments have been rejected by the courts. See Delaney v. Prudential
16 Ins. Co. of Am., 68 F.Supp. 3d 1214, 1220 (D. Or. 2014) (provisions giving insurer
17 authority to construe Plan provisions to comply with state or federal law do not confer
18 discretionary authority over claims decisions); see also Mazet v. Halliburton Co. Long
19 Term Disability Plan, 366 Fed. App'x. 839, 840-41 (9th Cir. 2010) ("proof of loss" and
20 "satisfactory proof" provisions are ambiguous and thus do not provide sufficient grounds
21 for adopting abuse of discretion standard); Feibusch v. Integrated Device Tech., 463 F.3d
22 880, 883-85 (9th Cir. 2006) (language requiring "satisfactory proof" of claim is inadequate
23 to confer discretion); Ingram v. Martin Marietta Long Term Disability Income Plan for
24 Salaried Employees of Transferred GE Operations, 244 F.3d 1109, 1112-13 (9th Cir.
25 2001) (language that insurer will "make all decisions on claims" and that "the
26 management and control of the operation and administration of claims procedures under
27 the Plan, including the review and payment or denial of claims and the provision of full
28 and fair review of claim denial" pursuant to ERISA § 503, "shall be vested in" the insurer,

was not a grant of discretionary authority); Simkins v. Nevadacare, Inc., 229 F.3d 729, 733-34 (9th Cir. 2000) (grant of discretion to insurer to define policy and procedure was not the same as discretion to construe terms of plan).

Defendants argue further that notwithstanding that the Group Contract states that it consists only of the Contract and the Certificate of Coverage, plus amendments and endorsements to the Contract, those documents are merely components of the "larger Plan," which they assert also includes the employer Plan Document. They contend that certain statements in the employer Plan Document confer discretionary authority on Prudential with regard to claims decisions. See Chandler Decl., Exh. E, at 30. Plaintiff concedes that this language confers discretionary authority on Prudential, but argues that the employer Plan Document is not part of the Plan, and thus does not change the standard of review from de novo to the more deferential abuse of discretion.

Defendants' argument is not persuasive. Nowhere, other than in defendants' opposition to plaintiff's motion and in the supporting declaration by Blue Shield representative Peter Bassett, is there any suggestion that the employer Plan Document is part of the Plan. To the contrary, the Group Contract states that it includes the Contract and the Certificate of Coverage, but there is no mention of a summary plan description, and the Summary Plan Description that is appended to the Certificate of Coverage states that it is "not part of" the Certificate (and thus, by implication, it is not part of the Group Contract).

The employer Plan Document (also confusingly entitled "Summary Plan Description") plainly states that it "describes" the benefit programs "made available to eligible employees of Blue Shield . . . through the . . . Plan." Chandler Decl., Exh. E at 1. Under ERISA, a "plan" is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). A "plan" must be "established and maintained pursuant to a written instrument." Id. § 1102(a)(1). A "summary plan description," on the other hand, is a disclosure meant "to reasonably apprise participants and beneficiaries of their rights and obligations under the plan." Id. § 1022(a).

7

1    Statements in a summary plan description "do not themselves constitute the <u>terms
2    of the plan.</u>" See <u>Cigna Corp. v. Amara</u>, 563 U.S. 421, 438 (2011).  That is, a statutorily-
3    required summary plan description contains information "about the plan" but is not itself
4    "part of the plan." <u>Id.</u> at 436.  While a summary plan description may contain plan terms,
5    it cannot override or supplement the terms of other plan documents.  <u>Pritchard v. MetLife</u>,
6    783 F.3d 1166, 1170 (9th Cir. 2015).  Moreover, where – as here – a summary plan
7    description is not incorporated in the plan document, and is in fact "'absent' from
8    documents listed in [the] plan's integration clause," a grant of discretion in the summary
9    plan document plainly cannot be considered a term of the plan.  See <u>id.</u> at 1170-71.

10    Logically, then, a document such as the employer Plan Document, which
11    "describes" benefits available "through" an ERISA plan, cannot also be the plan, or at a
12    minimum, cannot conflict with or change the terms of the plan.  Further, in this case, the
13    employer Plan Document makes clear that if there is a conflict between its provisions and
14    "the related benefit program materials or the Plan," the Plan will govern.  <u>Id.</u> at 2.  Again,
15    a document that is part of a plan cannot also conflict with that plan.

16    Nor have defendants shown that the employer Plan Document amended the
17    Group Contract.  The Group Contract provides that the "entire" Group Contract consists
18    of the Group Certificate(s), any modifications to the Group Certificate(s), the forms listed
19    in the Contract as of the contract date, the Contract Holder's application, any
20    amendments or endorsements to the Group Contract, and the individual applications of
21    any of the persons insured.  Any modification or amendment to the Group Contract can
22    be made only if signed by an officer of Prudential.  There is no indication that any officer
23    of Prudential agreed in writing to amend the Contract to add discretionary language.

24    Second, even were it true that the employer Plan Document effectively conferred
25    discretion on Prudential, such grant of discretion provision would be void and
26    unenforceable under Insurance Code § 10110.6.  Section 10110.6 provides, in relevant
27    part,

28    (a) If a policy, contract, certificate, or agreement

8

>offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.
>
>(b) For purposes of this section, "renewed" means continued in force on or after the policy's anniversary date.
>
>(c) For purposes of this section, the term "discretionary authority" means a policy provision that has the effect of conferring discretion on an insurer or other claim administrator to determine entitlement to benefits or interpret policy language that, in turn, could lead to a deferential standard of review by any reviewing court.
>
>(d) Nothing in this section prohibits an insurer from including a provision in a contract that informs an insured that as part of its routine operations the insurer applies the terms of its contracts for making decisions, including making determinations regarding eligibility, receipt of benefits and claims, or explaining policies, procedures, and processes, so long as the provision could not give rise to a deferential standard of review by any reviewing court.

Cal. Ins. Code § 10110.6(a)-(d). By its own terms, § 10110.6 is "self-executing." Id. § 10110.6(g). Thus, if an insurance "policy, contract, certificate, or agreement contains a provision rendered void and unenforceable by this section, the parties to the policy, contract, certificate, or agreement and the courts shall treat that provision as void and unenforceable." Id.

Defendants assert that § 10110.6 does not void the grant of discretionary authority in the Employer Plan Document. As an initial matter, they argue that § 10110.6 does not apply to the Employer Plan Document because the Plan is not an insurance contract and Blue Shield (plaintiff's employer) is not an insurer. However, the purpose of the Legislature in enacting Senate Bill No. 621, which became § 10110.6, was to "prohibit life and disability insurance policies from containing a discretionary clause, and to prohibit the Insurance Commissioner from approving disability insurance policies that contain a discretionary clause." S. Rules Comm., 2011-2012 Sess., S.B. 621 (Cal. Aug. 26, 2011).

As enacted, § 10110.6 by its terms plainly applies to "insurance policies, contracts, certificates, and agreements." See Cal. Ins. Code § 10110.6(a).

"An ERISA plan is a contract." Harlick v. Blue Shield of Ca., 686 F.3d 699, 708 (9th Cir. 2012); see also LeGras v. Aetna Life Ins. Co., 786 F.3d 1233, 1240 (9th Cir. 2015). Moreover, the Supreme Court has held that states may regulate insured employee benefit plans by legislating mandatory plan terms (although the same rule does not apply to self-funded plans). See FMC Corp. v. Holliday, 498 U.S. 52, 64 (1990); see also UNUM Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 376 (1999). Thus, § 10110.6 applies to ERISA plan documents because it applies to "contracts" and "insurance policies." See, e.g., Jahn-Derian v. Metro. Life Ins. Co., 2015 WL 900717, at *3 (C.D. Cal. Mar. 3, 2015); Gonda v. The Permanente Med. Grp., Inc., 10 F. Supp. 3d 1091, 1095 (N.D. Cal. 2014); Snyder v. Unum Life Ins. Co. of Am., 2014 WL 7734715, at *8 (C.D. Cal. Oct. 28, 2014).

Defendants point to Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan, 2014 WL 979191 (C.D. Cal. March 12, 2014), a case holding that § 10110.6 did not void a grant of discretion in an ERISA plan, on the basis that § 10110.6 refers to a "policy," not to a "benefits plan," and the discretionary clause at issue was found in the plan itself, but not in the policy of insurance. However, that same argument has been rejected by numerous other judges in this district. See Rapolla v. Waste Mgmt Emp. Benefits Plan, 2014 WL 2918863, at *6 (N.D. Cal. June 25, 2014) (a holding that § 10110.6 does not apply to discretionary clauses located in ERISA plans "would render section 10110.6 'practically meaningless'") (citation omitted); Gonda v. The Permanente Med. Grp., Inc., 10 F.Supp. 3d 1091, 1092-95 (N.D. Cal. 2014); Polnicky v. Liberty Life Assur. Co. of Boston, 999 F.Supp.2d 1144, 1149 (N.D. Cal. 2013); see also Snyder v. Unum Life Ins. Co. of Am., 2014 WL 7734715, at *7 (C.D. Cal. Oct. 28, 2014) (§ 10110.6 applied to a summary plan description because it was part of the insurance "agreement").

Nearly every federal district courts that has examined § 10110.6 in the ERISA context has concluded that § 10110.6 is applicable to ERISA plans. See, e.g., Thomas v.

Aetna Life Ins. Co., 2016 WL 4368110 at *4-6 (E.D. Cal. Aug. 15, 2016); Hirschkron v. Principal Life Ins. Co., 141 F.Supp. 3d 1028, 1030-31 (N.D. Cal. 2015); Felix v. MetLife Ins. Co., 2015 WL 3866760 at *3-4 (C.D. Cal. June 19, 2015); Curran v. United of Omaha Life Ins. Co., 38 F. Supp. 3d 1184, 1188-90 (S.D. Cal. 2014); Cerone v. Reliance Standard Life Ins. Co., 9 F. Supp. 3d 1145, 1149-50 (S.D. Cal. 2014).

For example, in the Thomas case, the court determined that the plan provided the plan administrator with discretion and authority to interpret the provisions of the plan and to decide whether claimants were entitled to benefits, and further, that the plan sufficiently delegated the administrator's discretionary authority to the insurer. Id., 2016 WL 4368110 at *4. However, the court found that § 10110.6 rendered the discretionary clauses void and unenforceable. Id. at *4-6.

Similarly, in the Hirschkron case, notwithstanding that both the Group Policy and the Certificate included language conferring discretionary authority on the insurer, the court found that the plain language of § 10110.6 voided the discretionary provisions. Id., 141 F.Supp. 3d at 1030-31. In Curran, the court found that language conferring discretionary authority in a policy that had been "renewed" and remained in effect beyond § 10110.6's effective date of January 1, 2012, fell within the statute's scope of application and thus included a void and unenforceable discretionary clause. Id., 38 F.Supp. 3d at 1191.

Defendants argue in the alternative that even if § 10110.6 did apply to the employer Plan Document, it would be preempted by ERISA. ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Based on this provision, defendants contend that if a state law relates to employee benefit plans, it is preempted.

While "[s]tate law regulating insurance generally is not displaced [by ERISA], . . . 'where [that] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs." John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank, 510 U.S. 86, 99 (1993). Pre-emption may be express or implied,

and "'is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" Shaw v. Delta Airlines, Inc., 463 U.S. 85, 95 (1983) (citation omitted). "The question whether a certain state action is preempted by federal law is one of congressional intent." Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987).

Defendants argue that ERISA's broad preemption of state laws applies if 1) an ERISA benefit plan exists; 2) the state claims "relate to" an employee benefit plan, and (3) the state claim is not "saved" from ERISA's broad preemptive scheme by operation of ERISA's savings clause relating to state laws which solely regulate insurance. See 29 U.S.C. §1144(a); 29 U.S.C § 1144(b)(2)(A); Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 333 (2003). They assert that there is no dispute that the Plan and the benefits at issue in this matter are governed by ERISA, and that § 10110.6 relates to an employee benefit plan. Thus, they contend, the only question is whether § 10110.6 constitutes a law regulating insurance that would be saved from ERISA preemption.

ERISA's "savings clause" protects state laws regulating insurance from ERISA preemption if the state law is specifically directed toward entities engaged in insurance, and the state law substantially affects the risk pooling arrangement between the insurer and the insured. See 29 U.S.C § 1144(b)(2)(A); Miller, 538 U.S. at 338. Defendants contend that interpreting § 10110.6 to void the "discretionary" language in the employer Plan Document would expand § 10110.6 to an entity (Blue Shield) that is not engaged in the business of insurance with respect to the long-term disability benefits at issue. Therefore, they assert, to the extent plaintiff seeks to "expand" § 10110.6 to apply to the employer Plan Document and Blue Shield, it cannot be saved from ERISA preemption as a law that regulates insurance.

While the Ninth Circuit has yet to rule on the applicability of § 10110.6 in ERISA cases, it did hold in Standard v. Morrison, 584 F.3d 837 (9th Cir. 2009) that the refusal of the Montana insurance commissioner to approve insurance forms for use in the state if they contained a grant of discretionary authority to the insurer was a valid exercise of

12

1  state power.  The Ninth Circuit's analysis in Morrison easily disposes of defendants'
2  preemption argument.  The court held that the Montana insurance commissioner's policy
3  was a state practice that was not preempted by ERISA.  Id., 584 F.3d at 842.  In so
4  ruling, the court applied the analysis in Miller regarding ERISA's savings clause.  Id.
5  (citing Miller, 538 U.S. at 342).

6  The Ninth Circuit noted that "ERISA plans are a form of insurance," and held that
7  the Montana insurance commissioner's practice regulated insurance companies by
8  limiting what they can and cannot include in their insurance policies.  Id.  The court also
9  found that because Montana insureds could no longer agree to a discretionary clause in
10 exchange for a more affordable premium, the scope of permissible bargains between
11 insurers and insureds had thus narrowed, noting that the Supreme Court has repeatedly
12 upheld similar scope-narrowing regulations.  Id. at 844-45.  In addition, the court found
13 that, in removing the benefit of a deferential standard of review from insurers, the
14 insurance commissioner had made it more likely that a greater number of claims would
15 be paid, with the result that more losses would be covered, thereby increasing the benefit
16 of risk pooling for consumers.  Id.

17 Since Morrison, numerous district courts have held that ERISA does not preempt
18 § 10110.6.  See Snyder, 2014 WL 7734715, at *10 (collecting cases); see also Thomas,
19 2016 WL 4368110 at *4-6; Jahn-Derian, 2015 WL 900717 at *4.  Further, the Supreme
20 Court has held that states have the power to regulate insured benefit plans, based on the
21 fact that ERISA expressly "saves" state laws that regulate insurance from preemption,
22 see 29 U.S.C. § 1144(b)(2)(A), and that insurance policy provisions that are mandated by
23 state law are not preempted by ERISA.  See MetLife Ins. Co. v. Mass., 471 U.S. 724,
24 746-47 (1985).  California's "anti-discretion" statute is one such state-mandated policy
25 term.

## CONCLUSION

27 In accordance with the foregoing, the court GRANTS plaintiff's motion.  The
28 standard of review shall be de novo.

Within one week of the date of this order, counsel shall meet and confer, and submit a stipulation proposing a briefing schedule and hearing for cross-motions for summary judgment.

**IT IS SO ORDERED.**

Dated: October 3, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge

14